152 N.J. Super. 1 (1977)
377 A.2d 740
COMMONWEALTH LAND TITLE INSURANCE CO., A CORPORATION OF THE STATE OF NEW JERSEY, U.S. LIFE TITLE INSURANCE CO. OF NEW YORK, A CORPORATION AND JOSEPH P. MC GOVERN AND CAMILLE MC GOVERN, HIS WIFE, PLAINTIFFS,
v.
CONKLIN ASSOCIATES, A CORPORATION, AND ERNEST G. TOPPING, DEFENDANT AND THIRD PARTY PLAINTIFF,
v.
HOWARD HARRISON, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 6, 1977.
*3 Mr. Morton R. Covitz for plaintiffs (Messrs. Greenberg and Covitz, attorneys).
Mr. James P. Logan for defendant and third party plaintiff (Messrs. Logan and Logan, attorneys).
Mr. Charles C. Collins, Jr. for third-party defendant.
DALTON, J.S.C.
On April 21, 1975 plaintiffs initiated this action seeking damages from defendants, professional *4 engineers and land surveyors, arising from an alleged error committed by them in March 1963.[1] The complaint is framed in six counts and charges defendants with negligence and breach of contract in conducting certain surveys here in issue. As stipulated, the material facts are as follows:
In early 1963 members of the DePuy family contracted to sell to Harold S. Wells, a land developer, a portion of their property located in the neighboring municipalities of Ramapo, New York, and Upper Saddle River, New Jersey. The contract provided that the land to be conveyed was estimated to be 35.688 acres and was to be subject to an accurate survey. Consequently, Wells engaged Conklin Associates to perform the necessary survey and on March 5, 1963 a perimeter survey of the tract was made. Thereafter the DePuy family deeded the property to Fox Hill Estates, an assignee of Wells, for the contract price of $3,500 an acre. Subsequent to this conveyance a subdivision map was prepared and filed with the county clerk; roads and utilities were constructed and installed; individual lots were sold, and residences were built.
In September 1969 the DePuy family sold the balance of its property, located in Ramapo, New York, to the Old Hickory Land Development Company which, in turn, conveyed the land to Wulster Realty, Inc. Both corporations were principally owned by William Wulster, who intended to develop the tract with residential housing. Accordingly, in early 1973 Wulster hired Ostertag and McDougall, another *5 engineering and surveying firm, to prepare the necessary survey. As a result of this survey it was discovered that the 1963 survey prepared by Conklin Associates had erroneously located the New York State-New Jersey boundary line which served as the dividing line of the Wells and Wulster properties. The true boundary was, in fact, approximately 20 feet further south than the survey of Conklin Associates had indicated. Thus, those residences which abutted the southern border of the Wulster property encroached upon and overlapped approximately six-tenths of an acre of the Wulster tract. Desirous of an expeditious resolution of the problem, Wulster contacted his neighbors to the south and initiated negotiations with them and their title companies. After an extended discussion, a settlement was eventually reached whereby Wulster received $30,000 for the encroachment. As a result, this action was initiated by the two title companies, suing as subrogees, and by the McGoverns suing as uninsured property owners who had contributed $4,000 to the settlement.[2]
At trial defendants raised the defense of the ten-year statute of limitations, N.J.S.A. 2A:14-1.1. The statute provides in pertinent part:
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, * * * shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.
Defendants further urged that the settlement figure of $30,000 was an arbitrary and unreasonable sum to have paid *6 for the encroachment. Plaintiffs, however, maintained that the statute is inapplicable to the occurrences here, relying on New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419 (1968), and that the $30,000 accord was, under the circumstances, a reasonable, soundly negotiated settlement.
Of significance in determining the issue of the applicability of the statute of limitations is the fact that subsequent to the 1963 survey, and within ten years of the filing of the complaint, individual surveys were prepared for six of the seven lots surveyed by Conklin Associates.[3] In each of these, the erroneous boundary line appears. Thus, plaintiffs suggest that should this court conclude that the statutory limitation is applicable to the 1963 survey, the subsequent acts of defendants amount to an independent recurrence of the error and, as such, are removed from the protective bar of the statute.
Effective on May 18, 1967, N.J.S.A. 2A:14-1.1 has been interpreted by our Supreme Court as having broad, remedial purposes. In addition to the fundamental principles of repose and stability in human affairs common to all statutes of limitations, this legislation was also designed to offset the increased exposure to which architects, contractors and the like had been subjected as a result of the judicial expansion of the discovery rule and the rejection of the "completed and accepted" rule. O'Connor v. Abraham Altus, 67 N.J. 106, 117-119 (1975); Rosenberg v. North Bergen, 61 N.J. 190, 198 (1972). In Rosenberg, Justice Mountain upheld N.J. *7 S.A. 2A:14-1.1 against various constitutional attacks and discussed its parameters, reasoning that the statute is "a legislative response to delimit this greatly increased exposure." [At 194]. Consequently, the statute was held to apply to "all who can, by a sensible reading of the words of the act, be brought within its ambit." Id. at 198.[4]
Following the guide of Rosenberg, this court is of the view that the defendants, as surveyors, fall within the protection afforded by N.J.S.A. 2A:14-1.1. There can be little doubt that the work of a surveyor is an integral part in the design and planning of a residential housing development. The reports, analysis, investigation and plat map preparation are all necessary elements in the planning of such an improvement to land. Plaintiff's reliance on New Market Poultry Farms, Inc. v. Fellows, is misplaced. Although decided subsequent to the enactment of N.J.S.A. 2A:14-1.1, New Market did not concern the ten-year statute of limitations. Rather, the court was faced with the six-year tortious injury to property statute, N.J.S.A. 2A:14-1, and with the issue of whether the equitable discovery rule should be expanded in application so as to afford to the plaintiff there the benefit of the rule. In holding that application of the rule was warranted, the court did so without allusion to the statute which is raised in this case. In light of Rosenberg, it must be concluded that New Market is inapposite with respect to the applicability of the ten-year statute to the instant matter. While the facts of the tortious conduct involved in New Market *8 are closely in point with those here, significantly the legal facts are not.
Notwithstanding these conclusions, the issue of the subsequent individual lot surveys, prepared in reliance upon the original 1963 survey is, in essence, the core of this litigation. It is fundamental that the tort of negligence is not committed unless and until there has been a negligent act with proximately resulting injury or damage. The careless act itself is not enough to give rise to a cause of action; there must also be consequential injury or damage. Rosenau v. New Brunswick, 51 N.J. 130, 137-139 (1968); Burd v. New Jersey Tel. Co., 149 N.J. Super. 20, 30 (App. Div. 1977). Thus, plaintiffs' causes of action did not arise until 1973 when the new survey was obtained. Thus, if defendants' premise that the sole offending act occurred in 1963 is adopted here, not only are plaintiffs' claims time-barred but, more precisely, they never arose. See Rosenberg v. North Bergen, supra, 61 N.J. at 199. Such a conclusion is unwarranted. All seven individual surveys, which are the subject matter of this suit, were completed between 1963 and 1966 by Topping on behalf of Conklin Associates. However, in view of the above finding that N.J.S.A. 2A: 14-1.1 is applicable to land surveyors, the survey of Lot 11, performed in 1964, cannot constitute a cause of action or basis of recovery against Conklin Associates. Also, it is well to note that while these surveys were not certified or performed by Harrison, his liability rests on the settled principle of partnership law that all partners are jointly and severally liable for the torts committed by a member of the partnership in the course of partnership business. Eule v. Eule Motor Sales, 34 N.J. 537 (1961); Uniform Partnership Law, § 15, N.J.S.A. 42:1-15. Defendants' argument that the individual lot surveys are but restatements or a continuation of a single act and hence are not now actionable is not persuasive and misperceives the realities of the error. In 1963 the original survey was performed at the request of Wells, the land developer, in order to provide *9 him with the subdivision map necessary to the development of the tract. At that time, of course, there were no individual lot owners and there were none for several years. When the residences were constructed and purchased, the individual owners had surveys of their lots conducted, defining the perimeters of their properties. In all instances the state-line boundary was determined, not by a new survey but rather by reference to the filed subdivision map containing the error. This court finds that these surveys were, from a statute of limitations point of view, acts separate and distinct from the original 1963 survey.
Further, this court is satisfied that the evidence at trial adequately supports the charge of defendants' culpability. Expert testimony revealed that field markers, or monuments, delineate the state boundary at regular intervals. Rather than locate more than one such monument, as would have been the proper practice, defendants located one. As a result, the error was made. This bespoke negligence. Prosser, Law of Torts (4th ed. 1971), § 33. In repeating the error by relying on the original mistake, defendants engaged in a new, independent course of conduct, albeit based upon an original wrongful act. While defendants suggest that this reliance was not negligent, offering expert testimony to the effect that it is the usual custom and practice of a surveyor in preparing individual lot surveys to rely upon the state line descriptions of a filed subdivision map, defendants are estopped to assert that the reliance placed on their own earlier negligent conduct was reasonable. Restatement of Torts, § 894, Comment (b). Thus, in erroneously preparing the individual lot surveys, defendants exposed themselves anew to the charge of negligence. The failure to ascertain the true descriptions of these border lots was caused by an unreasonable failure to produce an accurate survey of the state line. Each time this was done negligence was involved. See Restatement of Torts, § 552.
For these reasons, then, the protection of N.J.S.A. 2A: 14-1.1 is not available to the defendants and this court *10 finds them liable for the negligent surveys of Lots 6, 7, 8, 9, 12 and 16.
Consideration may now be given to the question of the reasonableness of the damages claimed by plaintiffs. It is fundamental that an award of damages is left to the sound discretion of the trier of fact, Endress v. Brookdale Community College, 144 N.J. Super. 109, 142 (App. Div. 1976), and that the proper measure of damages in a negligence action is the amount which will reasonably compensate for all detriment naturally and proximately caused by the occurrence on which liability is based. See, e.g., State Farm Mut. Auto. Ins. Co. v. Toro, 127 N.J. Super. 223, 227 (Law Div. 1974). Thus, unless the accord by plaintiffs with Wulster is unsupported by the facts and circumstances, the settlement figure of $30,000 plus costs of $3,214.59, less a proportionate sum for Lots 10 and 11, should stand undisturbed as the fair measure of plaintiffs' damages. When the error was first brought to the attention of the homeowners, their title companies were promptly notified and negotiations were commenced with Wulster who, understandably, was able to negotiate from a position of strength. The error delayed and frustrated his plans for the development of his Ramapo tract. Indeed, as a result of this delay, Wulster's original subdivision plans fell through, requiring him to submit anew his plans for development of the Ramapo tract. While there was testimony at trial that several alternatives were considered in resolving the problem, the only practical solution was the purchase of the strip of land. Defendants urge that even so, the purchase price was unreasonably high and not diligently negotiated by Commonwealth. They further suggest that the proper measure of damages is the market value that the land would bring in an arm's-length negotiation, and that no evidence of this was introduced at trial. This overlooks the positions of the parties to the negotiations. The title companies were obligated to their insureds to protect them against any loss or claim and to expeditiously settle the matter. The New Jersey homeowners were faced *11 with a loss of sections of their developed properties and Wulster's time and contractual obligations hung heavy on him. Unless the matter was expeditiously concluded, greater expense might well have been incurred.
Under the circumstances, this court finds that the negotiated settlement was reached in good faith and is not an unfair or unreasonable measure of damages.
For the foregoing reasons, a judgment in the sum of $24,913.44[5] plus interest and costs will be entered jointly and severally against defendants Topping and Harrison as follows:

 For Joseph P. McGovern and
 Camille McGovern, his wife ................... $ 4,000.00
 For U.S. Life Title Insurance
 Co. of New York .............................. 4,156.43
 For Commonwealth Land Title
 Insurance Co. ................................ 16,757.01
 __________
 Total ................................ $24,913.44

NOTES
[1] Howard Harrison, joined as a direct defendant at trial, and Ernest Topping were partners in Conklin Associates until 1966. During the existence of this partnership, the original perimeter survey, as well as the subsequent individual lot surveys (see infra at 5), were prepared by Topping for the partnership. In 1966 Herbert Schlessinger purchased Harrison's interest and, until 1968, did business with Topping as Conklin Associates, Inc. In 1968 Topping sold his interest in the corporation to Schlessinger. Conklin Associates, Inc., was released by stipulation of dismissal executed prior to trial.
[2] In addition to the $30,000 paid to Wulster there were additional expenses of $3,214.59 incurred by Commonwealth in resurveying the properties, in recording deeds in Rockland County, N.Y., and for other related matters.
[3] Although there were eight residences along the state line which were affected by the error, only seven (Lots 6, 7, 8, 9, 10, 12 and 16) had been surveyed by Conklin Associates. Of these seven, only six were surveyed within ten years of the filing of the complaint in this action. The survey for the seventh lot (Lot 10) had been done in 1964. The survey for the eighth lot (Lot 11) had been prepared by William H. Schwanewede Associates, which is not a defendant here. Accordingly, Lot 11 is not a part of the case.

As to the six lots, then, four were insured by Commonwealth (Lots 6, 7, 9 and 16), one by U.S. Life (Lot 8) and one (Lot 12) was uninsured and owned by plaintiffs Joseph and Camille McGovern.
[4] The court further emphasized the scope of the statute:

For convenience we have referred to the beneficiaries of this legislation as architects and building contractors. But the favored class is much larger. It includes "any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property." We do not attempt at this time to enumerate all of the classes of persons coming within this statutory group. These might include, as examples only, the designer of a sewage plant for a development complex, a landscape gardener or a well driller. [61 N.J. at 201]
[5] Of the $33,214.59 paid by plaintiffs to clear title to the eight lots, $24,913.44 was paid by Commonwealth on behalf of Lots 6, 7, 8, 9, 10 and 11 which it insured. However, because the surveys of Lots 10 and 11 form no basis of recovery (see footnote 3, supra) Commonwealth's damage award has been limited to $16,757.01.