E. A. WILLIAMS, INC., A CORPORATION OF THE STATE OF NEW
JERSEY, PLAINTIFF-RESPONDENT, v. RUSSO DEVELOP-
MENT CORP., A CORPORATION OF THE STATE OF NEW
JERSEY ET AL., DEFENDANTS, AND FRANK W. KOESTNER,
SR., DEFENDANT-APPELLANT.

Argued September 25, 1979—Decided February 20, 1980.

*James A. Major, II* argued the cause for appellant (*Major & Major*, attorneys).

*David Noah Dubrow* argued the cause for respondent (*Stern, Dubrow, Marcus & Cooper*, attorneys).

The opinion of the Court was delivered by

HANDLER, J.

The main question presented in this case is whether a surveyor, who has negligently prepared a survey map resulting in the mislocation of a building, is protected from liability under a New Jersey statute, *L.*1967, *c.* 59, § 1, *N.J.S.A.* 2A:14–1.1. That statute provides that no action for damages "for any deficiency in the design, planning, supervision or construction of an improvement to real property" can be brought against "any person performing or furnishing the design, planning, supervision of construction or construction" more than ten years after the "performance or furnishing of such services and construction."

On February 14, 1974, plaintiff E. A. Williams, Inc., a corporation engaged in the foundry business ("Williams"), instituted suit against Frank W. Koestner, Sr. and Frank W. Koestner, Jr., both of whom are state-licensed engineers and surveyors, for damages allegedly caused by the Koestners' negligent preparation of surveys dealing with plaintiff's property on May 5, 1953 and February 4, 1954. Also joined as defendant was Frank W. Koestner Associates, a firm of which Koestner, Jr. is the president. It is undisputed that in 1953, Williams decided to relocate its foundry operations from Jersey City to Carlstadt. The corporation hired Koestner, Sr., who was then doing business as Frank W. Koestner, Sr., to prepare a survey of the premises acquired for the business and to delineate the exact location where a building should be constructed in order that it would be placed in the center of the property.

Koestner's first survey, dated May 5, 1953, specified the building site and indicated that a building constructed on this site would be approximately 75 feet from the northern boundary of plaintiff's property. Ground stakes were then placed according to the survey marking the exact construction site. While construction was in progress, Koestner, Sr. reexamined his earlier calculations and realized that the first survey was inaccurate. He therefore prepared a second survey dated February 4, 1954 which indicated that there existed only 55 feet between the building and the northern property line. This discovery did not require the repositioning of the building and construction proceeded as scheduled. Relying upon the survey which showed a distance of 55 feet between the building and the northern property line, plaintiff proceeded to pave the intervening area and installed mechanical overhead doors on the northern face of the building. These improvements were to provide access for trucks to deliver and unload materials for the foundry.

At the time these improvements were made, the land abutting plaintiff's lot to the north was vacant and undeveloped and it remained so for approximately 18 years during which time

plaintiff conducted its business without difficulty. In 1972, however, the adjoining property was purchased by Russo Development Corporation, which began to construct a warehouse. In August 1972, Larry Russo, the president of Russo Corporation, informed plaintiff that only 35 feet separated plaintiff's building from their common property line and told plaintiff to keep off his land.

Russo proved to be correct. The 1954 Koestner survey was inaccurate. While Koestner had marked the boundaries of plaintiff's land correctly on his survey, he erroneously designated the location of the building. As a result, there were 20 fewer feet or actually only 35 feet, between the building and the northern property line. The 35-foot distance separating plaintiff's building from the Russo property line did not, according to plaintiff's president, provide sufficient area for performing the delivery and unloading process. Plaintiff therefore was forced to construct another roadway at a different location in order to provide ingress and egress for vehicles, to pave another portion of its property, and to relocate the overhead mechanical doors and unloading facilities to another portion of its building. Plaintiff had expended $3,500 to construct the roadway and expected to spend another $3,500 for the overhead doors.

No one who testified knew precisely why Koestner, Sr. had made the error but everyone, including Koestner, Jr., acknowledged that an error had been made. Kenneth Job, a licensed engineer and land surveyor called as an expert witness by plaintiff, stated unequivocally that if Koestner had adhered to the standard generally followed in the surveying profession, the error would not have occurred. At the close of all the evidence, the trial court dismissed the claims asserted against Koestner, Jr. and Koestner Associates, rulings not here called into question, and submitted the case to the jury. The jury returned with a verdict in favor of plaintiff in the amount of $8,000. Koestner then filed a notice of appeal to the Appellate Division. In a brief unpublished *per curiam* opinion, the Appellate Divi-

sion concluded that there was no merit to any of the contentions raised on the appeal. This Court granted Koestner's petition for certification. 81 *N.J.* 42 (1979).

I

The primary issue on appeal is the applicability of *N.J.S.A.* 2A:14–1.1 and whether that statute constitutes a complete bar to any claim for damages attributable to the faulty surveys. Defendants' answer did not set up either this statute or the statute of limitations, *N.J.S.A.* 2A:14–1, as an affirmative defense to plaintiff's action. After the case had been pretried, however, defendants moved for leave to amend their answer to assert *N.J.S.A.* 2A:14–1.1 as a bar to plaintiff's suit. The trial judge treated defendants' motion as a motion for summary judgment concerning the applicability of *N.J.S.A.* 2A:14–1.1; he ruled that the statute was inapplicable and denied the motion for summary judgment. In his view, a surveyor merely indicates the boundaries of an individual's property or the place where a building will be constructed on that property; he is not engaged in the "design, planning, supervision of construction or construction" of any structure that is ultimately built on the land. Consequently, the judge concluded that surveyors were "not within the 'special class' of persons which [*N.J.S.A.* 2A:14–1.1] was intended to protect."

The New Jersey statute is similar to legislation that has been enacted in some 28 jurisdictions. See Dooley, 2 *Modern Tort Law* 471 n. 3 (1977). It is designed to limit the time during which suit for particular damages claims may be brought against certain classes of persons, *i. e.*, architects, engineers, and building contractors. See Comment, "Limitation of Action Statutes for Architects and Builders—Blueprint for Non-action," 18 *Catholic U.L.Rev.* 361 (1969). Indeed, the precise language of *N.J.S.A.* 2A:14–1.1 derives in large part from a model statute drafted in 1967 which was endorsed by the American Institute of Architects, the National Society of Engineers, and the Associ-

ated General Contractors. *Id.* at 365. The motivational themes which weave through this legislation have been extensively discussed in two of this Court's recent decisions, *O'Connor v. Altus,* 67 *N.J.* 106 (1975) and *Rosenberg v. Town of North Bergen,* 61 *N.J.* 190 (1972).

Although acknowledging that the legislative history relating to *N.J.S.A.* 2A:14–1.1 is "meager and unrevealing," both Justice Mountain in *Rosenberg* and Justice Clifford in *O'Connor* noted that two unrelated legal trends existing in 1967, when *N.J.S.A.* 2A:14–1.1 took effect, probably coalesced to trigger the Legislature's adoption of the statute. The first of these developments was the expanding application by this Court, and courts of other jurisdictions, of the so-called "discovery rule" to new types of tort litigation; the effect of this trend was to prolong or extend the period of time for the accrual of a cause of action for tort. See, *e. g., Moran v. Napolitano,* 71 *N.J.* 133 (1976); *Fox v. Passaic General Hospital,* 71 *N.J.* 122 (1976); *Lopez v. Swyer,* 62 *N.J.* 267 (1973); *Diamond v. New Jersey Bell Telephone Co.,* 51 *N.J.* 594 (1968); *New Market Poultry Farms, Inc. v. Fellows,* 51 *N.J.* 419 (1968); *Fernandi v. Strully,* 35 *N.J.* 434 (1961). Because of the expansion of the discovery rule to new fields, those involved in the design and construction of buildings and other improvements to real property were concerned that their potential liability for injuries caused by defective workmanship would last indefinitely, inasmuch as many defects would often not be discovered or give rise to a claim for damages until an injury had in fact occurred. See *O'Connor v. Altus, supra,* 67 *N.J.* at 117; *Rosenberg v. Town of North Bergen, supra,* 61 *N.J.* at 195–198; Lunch, "Why Statutes of Limitations?," 22 *Consulting Engineer* 70, 70–71 (February 1964).

The second development mentioned in *Rosenberg* and *O'Connor* as contributing to the enactment of *N.J.S.A.* 2A:14–1.1 was the demise of the "completed and accepted" rule. Prior to 1967, under the law of this and most other states, the liability of a

contractor or architect deriving from the negligent design or construction of a structure terminated upon the completion of the professional's work and its acceptance by the property owner. See, *e. g., Miller v. Davis & Averill, Inc.*, 137 *N.J.L.* 671, 674–675 (E. & A. 1948). Once acceptance took place, third parties injured as a result of defects in the structure could look only to the owner for redress. In *Totten v. Gruzen*, 52 *N.J.* 202 (1968), however, this Court squarely abandoned the "completed and accepted" rule, and instead held that in the future ordinary principles of negligence would govern the liability of architects, engineers, and contractors for improper design and workmanship.[1] This development, when considered in conjunction with the judicial treatment of the discovery rule, left those involved in the design and construction of improvements to real property vulnerable indefinitely to liability for injuries arising from a structure's defect. See *O'Connor v. Altus, supra*, 67 *N.J.* at 117–118; *Rosenberg v. Town of North Bergen, supra*, 61 *N.J.* at 197–198.

The *O'Connor* decision also pointed to a third trend which precipitated the enactment of *N.J.S.A.* 2A:14–1.1, namely, this Court's expansion of strict liability in tort to builders and vendors of new homes for personal injuries caused by defects in those homes. See *Schipper v. Levitt & Sons, Inc.*, 44 *N.J.* 70 (1965). Also causing alarm to those involved in the construction process was the intimation in the *Schipper* case that "implied warranties" of workmanship and habitability might apply to the sale of a new home by a builder, a prognostication now fulfilled

---

[1] Although *Totten* was decided subsequent to the enactment of *N.J.S.A.* 2A:14–1.1, the *Rosenberg* and *O'Connor* decisions noted that the trend in other jurisdictions away from the "completed and accepted" rule was so clearly established by 1967 as to make it reasonable to assume that the Legislature took this trend into account in enacting the statute. See *O'Connor v. Altus, supra*, 67 *N.J.* at 118; *Rosenberg v. Town of North Bergen, supra*, 61 *N.J.* at 197 n. 2.

in *McDonald v. Mianecki*, 79 *N.J.* 275, 293 (1979). See *O'Connor v. Altus, supra*, 67 *N.J.* at 118–119.

These several considerations doubtless prompted the Legislature to enact *N.J.S.A.* 2A:14–1.1. While the central legislative concern was to limit the indefinite duration of liability for negligent work relating to realty improvements which are discovered to be defective many years later, *N.J.S.A.* 2A:14–1.1 is not a conventional statute of limitations. In fact, it is not really a statute of limitations at all, at least in the traditional understanding of that term. *N.J.S.A.* 2A:14–1.1 does not "bar" a remedy in the sense of providing an injured person a certain time to institute suit after the "accrual" of a "cause of action." Compare *White v. Violent Crimes Compensation Board*, 76 *N.J.* 368, 374–375 (1978) (interpretation and application of statute of limitations determined by whether it constitutes a substantive element of the cause of action) and *Kaczmarek v. N. J. Turnpike Auth.*, 77 *N.J.* 329, 338–340 (1978) (utilized analysis of the *White* opinion in determining application of statute of limitations enacted together with statutory cause of action) with *Tevis v. Tevis*, 79 *N.J.* 422, 427–430 (1979) (acknowledged analogy of common law immunity to statutory period of limitation in determining that the immunity did not constitute substantive element of common law tort but served rather to bar remedy). Rather, as emphasized in both *Rosenberg* and *O'Connor*, the statute prevents what might otherwise be a cause of action from ever arising. Injury occurring more than ten years after the performance of the negligent act simply forms no basis for recovery. The injured party literally has no cause of action. In the words of Justice Mountain,

> The harm that has been done is *damnum absque injuria* —a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights then to alter or modify a remedy. [*Rosenberg v. Town of North Bergen, supra*, 61 *N.J.* at 199]

See *O'Connor v. Altus, supra*, 67 *N.J.* at 121–122.

Justice Clifford in *O'Connor* noted three reasons why this special statutory protection for those involved in the design, planning, and construction of real property improvements was justifiable. These included the onerousness of potential liability continuing throughout one's professional life, the prejudice wrought by the passage of time not only in terms of defending against claims but also in factually ascertaining the true cause or causes of injuries, and general recognition that an injured party still retains his remedy against the property owner. *O'Connor v. Altus, supra,* 67 *N.J.* at 121; see Comment, *supra,* 18 *Catholic U.L.Rev.* at 384. It would appear that the reasons cited by the *Rosenberg* and *O'Connor* Courts for passage of *N.J.S.A.* 2A:14–1.1 would generally be applicable to a surveyor. See, *e. g., New Market Poultry Farms, Inc. v. Fellows, supra* (discovery rule extends period during which surveyor may be held liable for negligently-prepared survey).

It has been suggested that a legislative intent to exclude surveyors from the protected class can be gleaned from the statutory efforts of other states. In this connection, it is instructive to compare the wording of the model statute from which *N.J.S.A.* 2A:14–1.1 derives. See Comment, *supra,* 18 *Catholic U.L.Rev.* at 365 n. 31 (reprint of model statute). That model proposal, as New Jersey's statute, would apply generally to damages resulting from any deficiency in the "design, planning, supervision or . . . construction" of an improvement to real property. Several states, while adopting the core of the model statute, have modified it by adding the word "surveying" to the above quoted phrase. See Comment, *supra,* 18 *Catholic U.L.Rev.* at 364–365, 365 n. 27. The legislatures of these states, at least, possibly believed that surveyors might not otherwise be regarded as "planners" or "designers" of real property improvements and therefore required specific inclusion in order to be covered by the statute.

This circumstance does not persuade us, however, that the Legislature in the enactment of *N.J.S.A.* 2A:14–1.1 intended to

exclude surveyors from the protection of the law. Determining the scope of coverage entails scrutiny of the purpose of the act and the type of liability it sought to restrict. The model statute, which influenced the New Jersey legislation, clearly indicates that its suggested coverage with respect to claims for property damages, personal injuries, and wrongful death is limited to those caused by a deficient design or plan. The New Jersey statute carries forward this basic coverage but qualifies it rather significantly, *viz* :

> No action . . . for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for an injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, *arising out of the defective and unsafe condition of an improvement to real property* . . . shall be brought . . . more than 10 years after the performance or furnishing of such services and construction. . . . [*N.J.S.A.* 2A:14–1.1; emphasis supplied]

Thus, unlike the model statute, the New Jersey act would appear not only to require that damages arise from deficiencies in design, plan, supervision, or construction of the improvement, but also that those deficiencies be related to a resulting condition which is itself "defective and unsafe."

From a view of the statute as a whole and from a consideration of the purposes underlying its passage, it is reasonable to conclude that the statute was intended to terminate the liability of all persons who might be responsible for the existence of "defective and unsafe" conditions through their negligent design, plan, or construction of an improvement to real property. In *Rosenberg*, this Court recognized that aside from architects, engineers, and builders, other professionals, artisans, tradesmen and the like, who participate and contribute to the design, plan, or construction of a building, deserve the protection which the statute unquestionably affords the architect, engineer, and contractor. *Rosenberg v. Town of North Bergen, supra*, at 201. There is no reason why as a matter of primary coverage a surveyor whose professional work is functionally related to and integrated with a building plan or design,

work which gives rise or contributes to a defective and unsafe condition, should not fall within the statute. *Cf. Commonwealth Land Title Ins. Co. v. Conklin Associates*, 152 *N.J.Super.* 1, 7 (Law Div. 1977), aff'd o. b. *sub nom. Commonwealth Land Title Ins. Co. v. Topping*, 167 *N.J.Super.* 392 (App.Div. 1979) ("There can be little doubt that the work of a surveyor is an integral part in the design and planning of a residential housing development.").

■ Even though surveyors are entitled to the coverage of this statute, it does not follow that in this case the statute extinguishes plaintiff's claims for damages against the defendant. *N.J.S.A.* 2A:14–1.1 does not provide that *all* claims against planners and designers, including surveyors, vanish after the passage of ten years from the performance of services. As already emphasized, the statute deals with planning, design, supervision, and construction deficiencies and personal and property injury claims based on such deficiencies "arising out of the defective and unsafe conditions of an improvement to real property." Concededly the grammatical structure of the statute may invite different literal interpretations. It is possible, as the concurring opinion suggests, to read the statute as covering two distinct situations, *i. e.*, one relating simply to deficiencies in design, planning, supervision, or construction of an improvement, the other to defective and unsafe conditions causing personal or property injuries or death. An alternative and preferable reading, however, would apply the adjectival clause relating to "defective and unsafe" conditions as qualifying all of the situations mentioned in the statute.

Although the statute's grammar and word usage is hardly felicitous, the critical provisions bespeak rather clearly an intent to place a time restriction upon suits for damages involving "deficiencies" which involve or create a "defective and unsafe" condition. The model statute, as already noted, did not limit the proposed statutory coverage to defective and unsafe conditions. The New Jersey statute, however, very pointedly includes this as

a significant limiting qualification. Moreover, although the history of this law is largely unrecorded, it appears that its major impetus was to limit liability of designers, planners, and builders for damages from injury to persons and property, consequences that ordinarily flow from unsafe conditions. *Cf.* Lunch, "Why Statutes of Limitations?," *supra* (all examples of proposed statute's effect involved personal injury or property damage claims arising from unsafe conditions relating to defective designs, plans and the like); *N.C. State Ports Auth. v. L. A. Fry Roofing Co.*, 294 *N.C.* 73, 86, 240 *S.E.2d* 345, 353 (1978) (action against contractor for damages from leaky roof not covered by statute which applied to "any injury to property arising out of 'defective and unsafe condition' . . .").

The statute was meant to preclude the liability of those whose work created a situation hazardous to the well-being and safety of persons or property coming into contact with the improvement or structure. In virtually every case in which *N.J.S.A.* 2A:14–1.1 has been found applicable to a claim for damages the "deficiency" of design, plan, or construction attributable to defendant's negligence resulted in the creating of a hazardous condition. See *O'Connor v. Altus, supra* (child injured by running through glass side-light adjoining a door); *Rosenberg v. Town of North Bergen, supra* (woman injured by fall on a negligently-paved road); *Brown v. Jersey Central Power & Light Co.*, 163 *N.J.Super.* 179 (App.Div. 1978), certif. den. 79 *N.J.* 489 (1979) (electrician severely burned because of defectively-located electrical equipment installed at a missile site); *Hudson Cty. v. Terminal Construction Corp.*, 154 *N.J.Super.* 264 (App. Div. 1977), certif. den. 75 *N.J.* 605 (1978) (ceramic tiles installed in building began to crumble and fall, creating a "hazardous condition"); *Richards v. Union Building and Construction Corp.*, 130 *N.J.Super.* 127 (App.Div. 1974) (automobile collision caused by negligently-constructed roadway); *Salesian Society v. Formi-*

*di Corp.*, 120 *N.J.Super.* 493 (Law Div. 1972), aff'd o. b. 124 *N.J.Super.* 270 (App.Div. 1973) (water leaks damaged building's support structures); *contra, Commonwealth Land Title Ins. Co. v. Conklin Associates, supra.*

In many instances surveying errors would not give rise to "defective and unsafe" conditions. For example, a building might be located in the wrong place—a situation which may well cause the owner dismay and economic injury, *e. g., Commonwealth Land Title Ins. Co. v. Conklin Associates, supra,* but which will not create a safety hazard or cause injury to persons or property. That is what occurred in this case. The surveying error did not create a hazardous or unsafe condition in the building but rather resulted in its functional impairment with consequential economic losses entailed in its correction. The statute does not cover this type of defect. For this reason *N.J.S.A.* 2A:14–1.1 is not applicable as a defense to the claims asserted here.

## II

No other grounds are cognizable as a basis for reversing the judgment on appeal. As noted, *N.J.S.A.* 2A:14–1, the conventional statute of limitations, was not pleaded as an affirmative defense to plaintiff's action. It would in no event under the facts of this case serve to bar plaintiff's claim. See *New Market Poultry Farms, Inc. v. Fellows, supra.* Throughout all stages of this controversy, plaintiff has maintained that he did not discover Koestner's error until 1972, and that he could not have reasonably discovered the error prior to that date. Witnesses at the trial testified that this was the case. Defendant has never questioned plaintiff's contentions or evidence in this regard. His cause of action did not accrue until 1972. *Ibid.*; see also *Rosenau v. City of New Brunswick,* 51 *N.J.* 130, 137 (1968).

We do note, and it is not disputed, that the jury's verdict in the amount of $8,000 is based upon a mistake. The trial court inadvertently indicated to the jury that the evidence as to plaintiff's economic losses would total this sum when in fact

they would not exceed $7,000. We therefore direct that the judgment be corrected to reflect the proper amount. *R.* 2:10–5.

Accordingly, the judgment as corrected is affirmed.

SULLIVAN, J. (concurring in result).

I agree that there should be a judgment in favor of plaintiff for $7,000, but not for the reasons given in the majority opinion. I would hold that surveying work is not a part of the "design, planning, supervision or construction of an improvement to real property" within the meaning of *N.J.S.A.* 2A:14–1.1. Defendant Koestner, who made the erroneous survey (not discovered for some 18 years), is therefore not protected by the 10-year statutory limitation on bringing suit.

The majority holds that surveying work is included in the above language but that the 10-year limitation applies only when the work creates a "defective and unsafe condition." This is a misreading of the statute. The phrase "arising out of the defective and unsafe condition of an improvement to real property" does not modify the language "deficiency in the design, planning, supervision or construction of an improvement to real property." Rather, it relates only to an action "for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death." In short, I read the statute to refer to two separate and distinct kinds of action. The limiting clause, relied on by the majority, relates only to the second.

I would hold that surveying work is not part of "design, planning" etc. as set forth in the statute and that therefore the 10-year limitation is inapplicable.

Justice POLLOCK joins in this concurrence.

SULLIVAN and POLLOCK, JJ., concurring in the result.

*For affirmance* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal* —None.