869 A.2d 866

WENDY GRECZYN, PLAINTIFF–APPELLANT, AND STEVEN FISHMAN, PLAINTIFF, v. COLGATE–PALMOLIVE, DEFENDANT, AND KLING LINDQUIST, DEFENDANT–RESPONDENT, AND JOHN DOES (1–20) AND ABC CORPS. (1–20), DEFENDANTS.

Argued January 3, 2005—Decided March 21, 2005.

*Jared P. Kingsley,* argued the cause for appellant (*Bumgardner, Ellis, McCook & Kingsley,* attorneys).

*Andrew J. Carlowicz, Jr.,* argued the cause for respondent (*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys).

Justice LONG delivered the opinion of the Court.

On this appeal, we address the interplay of the statute of repose protecting designers and builders, *N.J.S.A.* 2A:14–1.1, and the rule governing our fictitious-party practice. *R.* 4:26–4. The case arose when plaintiff was injured on a staircase in a building approximately nine years after its completion. One month prior to the expiration of the ten-year statute of repose, plaintiff filed suit against the building's owner and several fictitious defendants, identified as the designers and builders of the staircase. A year after the expiration of the ten-year period, plaintiff amended her complaint, substituting the name of the designer of the staircase for one of the fictitious defendants. The designer moved for summary judgment, which the trial court granted and the Appellate Division affirmed. We granted plaintiff's petition for certification and now reverse.

■   We hold that, when plaintiff's injury and the filing of her lawsuit occur within the period of repose, utilization of our fictitious-party practice allows a previously unknown, although functionally identified, designer or builder to be named after the expiration of the period of repose, so long as plaintiff has acted diligently.

## I

The essential facts in the case are not in dispute. Plaintiff, Wendy Greczyn tripped and fell on a staircase in the Colgate–Palmolive office center in Piscataway on March 11, 1999. On October 3, 2000, Greczyn filed suit to recover damages for personal injuries allegedly arising from that fall.[1] She joined her employer, Colgate–Palmolive, solely for the purposes of discovery and named as additional defendants John Does, one through twenty, and ABC Corps., one through twenty. Greczyn described

---

[1] Steven Fishman, who was Greczyn's husband, was an original plaintiff. He has since been dismissed from the case.

fictitious defendants eleven through fifteen as the designers of the staircase on which she fell, and then, during discovery, learned that Kling Lindquist was the designer involved in the renovation and construction of that staircase. Kling Lindquist substantially completed its work on the staircase in November 1990, nearly ten years prior to Greczyn's initial complaint.[2] In October 2001, a trial judge granted Greczyn's motion to amend her complaint, substituting Kling Lindquist for a fictitious defendant. Greczyn filed an amended complaint in December 2001, explicitly naming Kling Lindquist in the suit for the first time.

In March 2003, a different trial judge granted Kling Lindquist's motion for summary judgment based on the ten-year statute of repose found in *N.J.S.A.* 2A:14–1.1.

The Appellate Division affirmed, relying on the distinction between a statute of limitations and a statute of repose. Acknowledging the considerations undergirding fictitious-party practice, the court nevertheless concluded that a statute of repose does not permit "relation back" under fictitious-party practice because relation back "would result in the complete evisceration of the period of repose the Legislature intended to confer." *Greczyn v. Colgate–Palmolive*, 367 *N.J.Super.* 385, 393, 842 *A.2d* 895, 900 (App. Div.2004). Moreover, the court concluded that because a statute of repose is substantive, it cannot be tolled under equitable principles. *Id.* at 394, 842 *A.2d* at 901. This petition for certification ensued. 180 *N.J.* 453, 852 *A.2d* 190.

## II

The parties reiterate the arguments they advanced before the Appellate Division. Greczyn contends that both the accident and

---

[2] In *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 *N.J.* 84, 117–19, 675 *A.2d* 1077, 1093–94 (1996), we held that the statute of repose, codified at *N.J.S.A.* 2A:14–1.1, commences with "substantial completion", i.e., when the certificate of occupancy is issued. The parties stipulate that the certificate of occupancy for the Colgate–Palmolive facility was issued on November 8, 1990. Greczyn's October 2000 filing was therefore within the ten-year statute of repose.

the original lawsuit occurred within the ten-year statute of repose and that that is all that is required. She argues that the occurrence of the injury and the filing of suit within the ten-year period is what distinguishes this case from the cases cited by Kling Lindquist and the Appellate Division. She further argues that any concern over endlessly extending the liability of designers and builders into the future are overstated in light of the requirement of diligence in fictitious-party practice. Finally, she urges "substantial compliance" as an alternative ground for reversing the Appellate Division.

Kling Lindquist counters that the plain language of *N.J.S.A.* 2A:14–1.1 prohibits the importation of the fictitious-party practice rules into the statute of repose; that that statute created substantive rights that we are without power to alter; that our long-standing jurisprudence supports the imperviousness of the statute of repose to Greczyn's attack; and that equitable notions such as substantial compliance have no place in a statute of repose analysis.

## III

Through its statute of repose, New Jersey provides protection from liability for architects and builders after a specific time period. *N.J.S.A.* 2A:14–1.1 provides in relevant part:

> No action ... to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property ... shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

The legislative history of the act is singularly unhelpful. As we observed in *Rosenberg v. Town of North Bergen,* 61 *N.J.* 190, 194, 293 *A.*2d 662, 664 (1972), it is "meager and unrevealing." *See also O'Connor v. Altus,* 67 *N.J.* 106, 121, 335 *A.*2d 545, 552 (1975) (stating that legislative history is "of little assistance"). We do know this however: the adoption of the discovery rule and the repudiation of the "completed and accepted rule" were two "unre-

lated developments in the law [that] may well have provided the motivation for [*N.J.S.A.* 2A:14–1.1]." *Rosenberg, supra,* 61 *N.J.* at 194, 293 *A.*2d at 664.

The discovery rule provides that the statute of limitations does not start to run until a victim discovers or should have discovered that a wrong has been inflicted. *Fernandi v. Strully,* 35 *N.J.* 434, 173 *A.*2d 277 (1961). The advent of the discovery rule exposed defendants, including architects and builders, to "potential liability for injuries caused by defective workmanship [that] would last indefinitely, inasmuch as many defects would often not be discovered or give rise to a claim for damages until an injury had in fact occurred." *E.A. Williams v. Russo Development Corp.,* 82 *N.J.* 160, 165, 411 *A.*2d 697, 699 (1980) (citing *O'Connor v. Altus, supra,* 67 *N.J.* at 117, 335 *A.*2d at 550–51; Lunch, "Why Statutes of Limitations?," 22 *Consulting Engineer,* 70, 70–71 (February 1964)).

The "completed and accepted rule" provided that an architect's or a builder's liability for negligent design or construction of a structure "terminated upon the completion of the professional's work and its acceptance by the property owner." *Id.* at 165–66, 411 *A.*2d at 699–700. We repudiated the "completed and accepted rule" outright in *Totten v. Gruzen,* 52 *N.J.* 202, 245 *A.*2d 1 (1968), a year after the enactment of *N.J.S.A.* 2A:14–1.1. As we have pointed out, the "tendency away from the completed and accepted rule was so clearly established as to make it reasonable to assume that the Legislature took that trend into account in enacting the statute." *O'Connor, supra,* 67 *N.J.* at 118, 335 *A.*2d at 551 (citing *Rosenberg, supra,* 61 *N.J.* at 197 n. 2, 293 *A.*2d at 666 n. 2). The demise of the "completed and accepted rule" "left those involved in the design and construction of improvements to real property vulnerable indefinitely to liability for injuries arising from a structure's defect." *E.A. Williams, supra,* 82 *N.J.* at 166, 411 *A.*2d at 700 (citing *O'Connor, supra,* 67 *N.J.* at 117–18, 335 *A.*2d at 550–51; *Rosenberg, supra,* 61 *N.J.* at 197–98, 293 *A.*2d at 665–66). *N.J.S.A.* 2A:14–1.1 was "a legislative response seeking to delimit

th[at] greatly increased exposure," *Rosenberg, supra,* 61 *N.J.* at 194, 293 *A.*2d at 664, and to "prevent 'liability for life' against contractors and architects." *Russo Farms, supra,* 144 *N.J.* at 117, 675 *A.*2d 1077, 1093 (1996).

## IV

The fictitious-party practice rule provides:

> In any action, irrespective of the amount in controversy, other than an action governed by *R.* 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained. If, however, defendant acknowledges his or her true name by written appearance or orally in open court, the complaint may be amended without notice and affidavit. No final judgment shall be entered against a person designated by a fictitious name. [*R.* 4:26–4.]

The purpose of the rule is to render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name. *Gallagher v. Burdette–Tomlin Hosp.,* 318 *N.J.Super.* 485, 492, 723 *A.*2d 1256, 1259 (App.Div.1999), *aff'd,* 163 *N.J.* 38, 747 *A.*2d 262 (2000). Judge Pressler's comment to the rule explains what it is not intended to cover:

> It does not apply if the plaintiff has properly designated some defendants by fictitious names and then later discovers a cause of action against undescribed defendants whom he then seeks to join. *Id.* Nor is the rule applicable where a plaintiff is unaware that an injury was caused by an identifiable defendant. *See Caravaggio v. D'Agostini,* 166 *N.J.* 237, 244 n. 1, 765 *A.*2d 182[, 185 n. 1] (2001). Moreover, the rule will not protect a plaintiff who had ample time to discover the unknown defendant's identity before the running of the statute of limitations. *See Matynska v. Fried,* 175 *N.J.* 51, 53, 811 *A.*2d 456[, 457] (2002).
>
> [Pressler, *Current N.J. Court Rules,* Comment on *R.* 4:26–4 (2005).]

Put another way, for the rule to operate, a specific claim must be filed against a described, though unnamed party, within the statute of limitations and plaintiff must diligently seek to identify the fictitiously-named defendant. That is the backdrop for our inquiry.

## V

Greczyn's fundamental argument is that this case is a perfect paradigm for invocation of the fictitious-party practice rule in that she sustained an injury and filed suit—identifying Kling Lindquist, although not by name—within the ten year repose period. Kling Lindquist counters that the plain language of *N.J.S.A.* 2A:14–1.1 prohibits any action against a "person" after ten years and that although Greczyn filed suit inside that window, it was not against a "person" within the meaning of the statute. That particular plain language argument is unpersuasive because an entirely different interpretation of the statute is plausible. Despite not being called by name, Greczyn's complaint fully identified "persons" by function: those John Does who "designed a certain interior staircase" at the Colgate–Palmolive office complex in Piscataway. In other words, though claiming against as yet "unnamable" persons, Greczyn's action was brought against "persons" nonetheless. Therefore, the plain language of the statute is not dispositive of the issue presented here.

## VI

We thus look beyond the words of the statute for enlightenment. As we have said, the legislative history, ordinarily a source of information, is not of assistance. Kling Lindquist suggests that our prior jurisprudence is dispositive of the correctness of the Appellate Division's holding that Greczyn's suit is barred. We disagree.

### A.

In *Rosenberg, supra,* plaintiff sued for injuries she sustained in 1968 when she caught her heel in a fissure in the roadbed of Bergenline Avenue in North Bergen. The road had been repaved in 1935. The contractors were granted summary judgment under *N.J.S.A.* 2A:14–1.1. The Appellate Division reversed on the ground that a road is not "an improvement to real property" within the meaning of the act. We granted certification and reversed the

narrow holding of the Appellate Division regarding the sweep of the statute. In so doing, we had occasion to comment on the character of *N.J.S.A.* 2A:14–1.1:

> It seems important, first, to examine the nature of this law. In an important respect it is unlike the typical statute of limitations. Commonly such a statute fixes a time within which an injured person must institute an action seeking redress, and generally this time span is measured from the moment the cause of action accrues. Here such is not the case. The time within which suit may be brought under this statute is entirely unrelated to the accrual of any cause of action.
>
> Where a claim for redress is based upon negligent injury to person or property, the cause of action accrues when there has been a negligent act with proximately resulting injury or damage. The careless act itself is not enough to give rise to a cause of action; there must also be consequential injury or damage. *Rosenau v. City of New Brunswick, supra,* 51 *N.J.* [130] at 137–139, 238 *A.*2d 169[, 172–74]. Thus plaintiff's alleged cause of action did not arise until she fell and sustained injury. Of course this was many years after the ten-year period fixed by the statute had expired. She claims that the statute, in its application to her, amounts to a deprivation of due process, since, as she expresses it, the statute bars her cause of action before it has arisen.
>
> This formulation suggests a misconception of the effect of the statute. It does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.
>
> [*Rosenberg, supra,* 61 *N.J.* at 199–200, 293 *A.*2d at 666–67.]

We went on to hold that plaintiff's action, brought thirty years after the repaving of the roadway, was barred.

In *O'Connor, supra,* an infant plaintiff asserted claims against a builder for injuries that occurred nine years after completion of the structure that she alleged was negligently built. The action was filed sixteen months after the injury, and thus outside the ten-year statute of repose. 67 *N.J.* at 120, 335 *A.*2d at 552. The state of the law at the time allowed a personal injury plaintiff to pursue a claim if she asserted it within two years of becoming twenty-one. *Ibid.* Applying *N.J.S.A.* 2A:14–1.1's prohibition, and citing *Rosenberg* extensively, however, we concluded that "the legislature did

not intend the ten-year period after construction to be 'expanded' by reason of one's infancy." *Id.* at 123, 335 *A.*2d at 554. Put another way, the infant could not file suit *after* ten years.

In *Hudson County v. Terminal Construction Corp.,* 154 *N.J.Super.* 264, 381 *A.*2d 355 (App.Div.1977), *certif. denied,* 75 *N.J.* 605, 384 *A.*2d 835 (1978), the court declined to extend the statute of repose to allow Hudson County to assert a claim for defects discovered in the county administration building in 1975 against the builder who completed construction in 1960. Hudson County's proposed exception to the ten-year statute of repose for allegations of fraud was unavailing in the face of the court's determination that "[s]uch an exception would quickly engulf the statute [ ] and render it worthless." *Id.* at 269, 381 *A.*2d at 357.

In *Stix v. Greenway Development Company, Inc.,* 185 *N.J.Super.* 86, 447 *A.*2d 577 (App.Div.1982), the Appellate Division affirmed a summary judgment dismissing plaintiff's 1980 complaint against a builder for negligent construction of a house completed prior to 1963. The court stated that the "plain [and] unambiguous" language of *N.J.S.A.* 2A:14–1.1 makes no exception for claims that are *filed* after expiration of the statute of repose, even those based on a theory of fraudulent misrepresentation. *Id.* at 89–90, 447 *A.*2d at 578–79.

We do not read those cases as dispositive of the issue before us. In *Rosenberg,* the complaint was filed thirty-three years after the "improvement" and in *Stix, Hudson County* and *O'Connor,* sixteen, fifteen and eleven years later, respectively. The statute of repose, by its very terms—"no action ... shall be *brought* ... more than ten years after ... construction"—bars those claims. In contrast to them, Greczyn both was injured and filed an action within the ten-year period of repose.

## B.

The Appellate Division cited several out-of-state cases as bearing on the issue presented here. In *Tindol v. Boston Housing*

*Authority*, 396 *Mass.* 515, 487 *N.E.*2d 488 (1986), a minor plaintiff, scalded in a public housing complex, commenced an action against the Boston Housing Authority in 1979 and in 1984 sought to amend the complaint to add architects and engineers. At the time, the statute of repose for tort actions arising from improvements to real property prohibited any action commenced "more than six years after the performance or furnishing of such design, planning, construction or general administration." *Id.* at 489 (quoting *Mass. Gen. Laws* c. 260, § 2b (1984)). The relevant improvement was completed in 1977. Plaintiff argued that the amendment adding an architecture firm and an engineering company "related back" to the original filing. *Id.* at 490. The Supreme Judicial Court disagreed, concluding, "[A]pplication of the relation-back doctrine would have the effect of reactivating a cause of action that the Legislature obviously intended to eliminate." *Id.* at 491 (quotation marks omitted).

*In Tindol,* the court was faced with a complaint that was filed outside the six-year statute of repose and no fictitious-party filing was implicated. *Tindol* is thus not of assistance in our present analysis except insofar as we agree that if Greczyn had not commenced her action within the ten-year period, she could not avoid the strictures of the repose statute.

Likewise, in *Nett v. Bellucci,* 437 *Mass.* 630, 774 *N.E.*2d 130 (2002), a minor plaintiff sought to amend a complaint and add a defendant before expiration of the statute of repose but did not file the complaint until after expiration of the statute. 774 *N.E.*2d at 132–34. The court in *Nett* discussed statutes of repose:

Both the statute governing medical malpractice tort claims involving minors, *G.L.* c. 231, § 60D, and the statute governing medical malpractice tort claims generally, *G.L.* c. 260, § 4, provide that "in no event shall any such action be *commenced* more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based" (emphasis added). Like all the statutes of repose, "[t]he effect [of these statutes] is to place an absolute time limit on the liability of those within [their] protection and to abolish a plaintiff's cause of action thereafter, even if the plaintiff's injury does not occur, or is not discovered, until after the statute's time limit has expired." *McGuinness v. Cotter,* 412 *Mass.* 617, 622, 591 *N.E.*2d 659 (1992), citing *Klein v. Catalano,* 386 *Mass.* 701, 702, 437 *N.E.*2d 514 (1982). Unlike statutes of limitation, statutes of repose may

not be "tolled" for any reason, as "tolling" would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose. *See Protective Life Ins. Co. v. Sullivan, supra* [425 *Mass.* 615] at 631 n. 19, 682 *N.E.*2d 624, citing *Sullivan v. Iantosca,* 409 *Mass.* 796, 798, 569 *N.E.*2d 822 (1991). The only way to satisfy the "absolute time limit" of a statute of repose is to "commence" the action prior to the expiration of that time limit. *McGuinness v. Cotter, supra. See Aldrich v. ADD Inc.,* 437 *Mass.* 213, 221, 770 *N.E.*2d 447 (2002).

[*Id.* at 134–35.]

The court went on to declare that for the purposes of the statute of repose, a case "commences" on the date of the filing of a motion for leave to amend a complaint to add a party, thus rendering plaintiff's claim timely. *Id.* at 143. In so doing, the court rejected a strict definition of commencement (filing of the complaint) stating: "We recognize that statutes of repose are harsh, but we will not adopt a needlessly artificial definition of 'commencement' of actions brought by way of amended complaints that would make a harsh rule even harsher." *Id.* at 142. Again, as in *Tindol,* nothing in *Nett* is dispositive of this case in which Greczyn in fact both was injured and filed suit within the time constraints of the statute of repose.

Contrariwise, the Alabama Supreme Court has faced the exact issue that is before us. In *Marsh v. Wenzel,* 732 *So.*2d 985 (1998), plaintiff sued her surgeon and various fictitious physicians in 1995, alleging negligence in failing to identify a tissue mass in her breast as malignant in 1993. *Id.* at 986. In 1997, plaintiff sought to add as a defendant the pathologist who analyzed the tissue mass. *Id.* at 987. The Circuit Court granted summary judgment to the pathologist, asserting that fictitious-party practice cannot be imported into Alabama's Medical Liability Act, *Ala.Code* § 6–5–482a, a statute of repose that prescribes: "[I]n no event may [an] action be commenced more than four years after [the alleged medical negligence occurred]." The Alabama Supreme Court rejected that notion and determined that the act

speaks of the commencement of an action as the necessary operative event. It does not expressly exclude the availability of fictitious-party practice and its doctrine of relation back. Once the plaintiff complies with [Alabama's fictitious-party practice rule], in an action that otherwise is timely filed, the doctrine of

*relation back . . . permits the plaintiff to satisfy the prerequisite that the action "be commenced" as set forth in § 6–5–482.*
[*Id.* at 988.]

The court concluded, however, that the plaintiff "knew the identity of the pathologist before the expiration of the four-year period. . . . [The plaintiff] [could not] reasonably [have been] deemed to have been ignorant of matters clearly set forth in the records." *Id.* at 988. Thus, because she was not diligent in ascertaining the identity of a fictitious party, the plaintiff was barred from pursuing her otherwise timely claim.

In *Oliver v. Woodward*, 824 So.2d 693 (2001), a victim of medical malpractice filed a complaint, including several fictitiously-named doctors, nineteen months after being injured. *Id.* at 694. After several years of discovery and the expiration of the repose period, plaintiff learned the identity of the emergency-room doctor who had provided treatment. She sought to add the doctor's name the following day. *Id.* at 696. The trial court granted summary judgment to the physician, but the Alabama Supreme Court reversed, allowing plaintiff to employ fictitious-party practice and amend the complaint after expiration of the period of repose. *Id.* at 697–98.

## VII

We are satisfied that the Alabama approach, allowing the use of fictitious-party practice in these circumstances, is sound.[3] First, *N.J.S.A.* 2A:14–1.1 does not specifically preclude importation of fictitious-party practice, thus rendering it open to interpretation on that issue. Second, the facts presented are exactly what fictitious-party practice was developed for—to protect a diligent

---

[3] Although we agree with the Alabama Supreme Court's reconciliation of its fictitious-party practice and statute of repose, we differ with its characterization of the situation as "relation-back". Relation-back is a way of justifying the belated addition of a new claim or a new party. Fictitious-party practice renders the initial filing against the identified but unnamed defendant timely in the first instance, subject only to diligent action by the plaintiff to insert defendant's real name.

plaintiff who is aware of a cause of action against a defendant but not the defendant's name, at the point at which the statute of limitations is about to run.

■ Kling Lindquist properly underscores that *N.J.S.A.* 2A:14–1.1 is not a statute of limitations but one of repose. However, that distinction does not end the inquiry. Even statutes of repose, also termed "substantive" statutes (when "the time in which the action must be commenced expires, both the remedy and the right are barred[,]" *LaFage v. Jani,* 166 *N.J.* 412, 421–22, 766 *A.2d* 1066[, 1070–71] (2001)), "need not necessarily be construed rigidly. *Negron [v. Llarena,* 156 *N.J.* 296, 304, 716 *A.2d* 1158, 1162 (1998)] confirmed that our 'approach to substantive statutes of limitations has evolved to one that recognizes that their application depends on statutory interpretation focusing on legislative intent and purposes.'"[4] *LaFage, supra,* 166 *N.J.* at 422, 766 *A.2d* at 1071.

Plainly, the Legislature intended to limit the time within which a cause of action may *arise* against an architect or builder to ten years from the date construction is substantially completed. Thus, injuries sustained or suits filed after the ten-year period are barred. Here, Greczyn's injury arose, and the complaint was filed, within the prescribed ten-year window, under the fictitious-party practice rule. The question is whether allowing that procedure will violate the Legislative intent underlying *N.J.S.A.* 2A:14–1.1. *Negron, supra,* 156 *N.J.* at 304, 716 *A.2d* at 1162. We think not.

Contrary to Kling Lindquist's view, allowing fictitious-party practice in this context will not subject an architect or a builder to liability for life or even to indefinite vulnerability for a structural defect. Two conditions preclude such endless exposure. The first is the filing within ten years, which is the statutorily authorized

---

[4] In *Rosenberg, supra,* we commented that *N.J.S.A.* 2A:14–1.1 is "unlike the typical statute of limitations[;]" and that "[a]ll statutes limiting in any way the time within which a judicial remedy may be sought are statutes of repose." 61 *N.J.* at 201, 293 *A.2d* at 667.

period, and the second is the requirement of due diligence. With respect to the former, a plaintiff who is injured or who files suit after ten years is simply out of time. Regarding the latter, a plaintiff who is injured and files within ten years but is dilatory in seeking the fictitious party's name is likewise barred. Where the elements of timely filing and diligence are satisfied, the potential exposure of a builder or designer is finite and circumscribed, thus meeting the legislative intent underlying *N.J.S.A.* 2A:14–1.1. Only this reading reconciles the statute and the rule.

## VIII

We therefore reverse the judgment of the Appellate Division and remand the case to the trial court for disposition of the question of Greczyn's diligence, an issue that was not reached originally because the court declined to recognize the applicability of fictitious-party practice in these circumstances. This ruling makes it unnecessary for us to address Greczyn's "substantial compliance" argument.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.