829 A.2d 652 (2003)
362 N.J. Super. 540
ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER, Plaintiff-Appellant/Cross-Respondent,
and WM. Blanchard Co., Plaintiff,
v.
MUIRFIELD CONSTRUCTION CO., Defendant/Third-Party Plaintiff-Respondent/Cross-Appellant,
and Hartford Fire Insurance Company, Defendant,
and Gerard Sheet Metal Fabricators, Inc., Third-Party Defendant-Respondent/Cross-Appellant,
and Fidelity and Deposit Company of Maryland, North American Reinsurance Corporation, Universal Underwriters Insurance Company, Prudential Reinsurance Corporation, Skandia America Reinsurance Corporation, and The Reinsurance Corporation of New York, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2003.
Decided July 29, 2003.
Barry J. Donohue and Bruce P. Ogden, Westfield, argued the cause for appellant/cross-respondent (Lindabury, McCormick & Estabrook, attorneys; Mr. Donohue and Mr. Ogden, of counsel and on the brief).
Robert Hedinger, Florham Park, argued the cause for respondent/cross-appellant Muirfield Construction Co. (Hedinger & Lawless, attorneys; Mr. Hedinger, on the brief).
Frank T. Araps, North Brunswick, argued the cause for respondent/cross-appellant Gerard Sheet Metal Fabricators (Mr. Araps and Margaret Shaara O'Brien, on the brief).
Before Judges KING, WEFING and LISA.
*653 The opinion of the court was delivered by KING, P.J.A.D
[This is a redacted version of our full and lengthy opinion in this construction litigation matter. Only this issue on the duty to object under R. 4:41-5(b) to the master's findings at the trial level in the Law Division in order to preserve for appellate review the findings of the master meets the criteria for publication. R. 1:36-2(d). We hold that the failure to object to the master's findings at the Law Division level did not preclude appellate review of the sufficiency of the evidence to support the master's findings and conclusions, especially in this context. We recommend that the Civil Practice Committee consider studying the matter with an eye to suggesting a clarifying amendment to the Supreme Court. We found that the record supported the master's findings in all respects and affirmed the judgment.]
In 1986, St. Joseph's Hospital and Medical Center (St. Joseph's) hired the Wm. Blanchard Co. (Blanchard) as construction manager for a multi-year, $42-million project of renovation and new construction for its facility (the project). During the new construction St. Joseph's would continue to operate. Blanchard was responsible for coordinating all aspects of the project and performing interior demolition in the areas to be renovated. For the other work, it hired trade contractors as its own subcontractors, including Muirfield Construction Co. (Muirfield) for plumbing and for heating, ventilation, and air-conditioning work (HVAC). Muirfield, in turn, hired. Gerard Sheet Metal Fabricators, Inc. (Gerard), as its subcontractor to design, fabricate and install HVAC ducts. Hartford Fire Insurance Company (Hartford) was Muirfield's surety. The remaining parties described in the caption were Blanchard's sureties. None had an active role at trial or on appeal.
The set of contracts among the parties had provisions, typical for construction projects, under which St. Joseph's would grant to Blanchard, and Blanchard would in turn grant to its subcontractors, an extension of time for delays which they encountered. Also in the contract were change orders covering payment for the extra labor and material costs which the delay caused, but which precluded Blanchard and the subcontractors from seeking any additional "delay damages" for inefficiencies or other lost opportunity costs arising from the delay, i.e., a "no-damages" provision. During the construction period, St. Joseph's realized there was a need for major additions to accommodate new patient services. This increased the project's cost to about $50 million. The delays eventually prompted St. Joseph's to have Blanchard accelerate all work on the project in order to achieve substantial completion by the planned dedication date for the hospital in September 1991 (the acceleration). The dedication occurred as scheduled; completion took another fourteen months.
St. Joseph's started this action by a suit seeking damages against Muirfield for Gerard's delay, prompting Muirfield to make a third-party claim against Gerard. The hierarchy of contracts nominally made St. Joseph's adverse to Blanchard and Muirfield adverse to Gerard because those were the pairings with contractual privity.The reality was that Muirfield and Gerard worked together to assert their claims as if St. Joseph's and Blanchard had acted as a single entity. The parties consented to the appointment of a master, retired Judge Richard S. Cohen, to conduct a complete trial-type hearing and render a report.
The master found that Gerard proved its extra costs on the project and that Muirfield had done so with a few exceptions. *654 More important, he found that the major additions and the acceleration sufficiently increased the degree of confusion, inefficiency, and uncertainty about scheduling work on the project so as to render the delays that those problems caused qualitatively broader than the types of delays ordinarily contemplated by parties who include a "no-damages" provision in a contract. He concluded that the "no-damages" provision did not govern the delays attributable to the major additions or to the acceleration.
The master estimated that the delays attributable to the major additions or to the acceleration accounted for only forty percent of Muirfield's and Gerard's extra costs on the project. The balance claimed represented ordinary kinds of delay which was precluded by the no-damages provision. The Law Division adopted the master's report without comment and entered judgment on it. St. Joseph's appeals the finding that the no-damages provision failed to cover all aspects of the project. Muirfield and Gerard cross-appeal from the failure to award the entirety of their extra costs and the failure to award the costs of defending against a frivolous claim. They also challenge the master's adjustment to one of their claimed cost items. Muirfield also raises an unavailing jurisdictional claim of first impression in New Jersey. [Sections of this opinion have been redacted for publication purposes. See R. 1:36-3.]
The master found that Muirfield had proved damages, exclusive of retainage, of $1,940,205.50, with prejudgment interest of $843,989.39.[1] The sum was $2,784,194.89, which the forty-percent factor reduced to a net amount of $1,113,677.90. With $252,292 for retainage plus $109,247.02 in interest, Muirfield's total recovery was $1,475,216.92. Gerard proved damages, exclusive of retainage, of $1,019,544.60, on which prejudgment interest was $443,501.90; application of the forty-percent factor reduced the $1,463,046.50 sum to a net amount of $585,218.60. He awarded Gerard $74,953 for retainage plus $32,604.55 in interest, for a total recovery of $692,776.15.
On March 14, 2000 at the request of the parties, the master issued a clarification of his report. He increased Muirfield's recovery by $17,556.56 to correct for an arithmetical mistake which brought Muirfield's total recovery to $1,492,773.48. He also explained that he had intended to recommend that Blanchard be as responsible for the judgment as St. Joseph's, so he expressed the recoveries as a set of contractual and tort judgments that in effect made Blanchard liable to Muirfield and Gerard, even though they ensured that only St. Joseph's would actually have to pay the damage awards.
On March 17, 2000 Gerard moved for an award of costs and counsel fees for having to defend against a frivolous action. On March 31, 2000 Muirfield made a similar motion, and cross-moved on Gerard's motion to preserve the right to "pass through" to plaintiffs any award that Gerard obtained. On April 5, 2000 Gerard moved for reconsideration, by the judge or in the alternative by the master, of the finding that only forty percent of its damages were awardable. On April 12, 2000 plaintiffs protested the unfairness of giving Muirfield and Gerard a chance in effect to retry this case before the judge or the master instead of taking their claims of error to the Appellate Division, and asked *655 the judge to accept the report in order to facilitate appeal.
On May 8, 2000 the judge issued his opinion concerning the report and Muirfield's and Gerard's motions. He adopted the master's report, as clarified. He denied Muirfield's and Gerard's motions for counsel fees, and denied Gerard's motion for reconsideration on the basis that the master had not "overlooked" Gerard's claim to be awarded the full amount of its damages.
On June 19, 2000 the judge entered an order for final judgment upon which the parties had "conferred." He dismissed plaintiffs' claims for damages, Muirfield's tort claims against Blanchard, and all claims for punitive damages, and denied Muirfield's and Gerard's motions for costs and attorney fees, as well as Gerard's motion for reconsideration. He entered judgment for Gerard against Blanchard for $705,416.83, the increase representing interest from February 29, 2000. He also entered judgment for Gerard against Muirfield in that amount, and judgment of indemnity for Muirfield against Blanchard and St. Joseph's up to the same amount. Muirfield was granted judgment against Blanchard and its sureties for $2,185,549.63, comprising its own award of $1,492,773.48, the $692,776.15 awarded to Gerard, and $39,878.97 as interest on both of those awards from February 29, 2000. On July 6, 2000, the judge entered an amended final order, with a correction to state the amount of Muirfield's judgment against Blanchard and its sureties as $2,225,428.60.
On August 1, 2000 St. Joseph's filed a notice of appeal. On August 16, 2000 Muirfield filed a notice of cross-appeal. On August 17, 2000 Gerard filed a notice of cross-appeal.
On January 5, 2001 Muirfield moved to dismiss the appeal pursuant to R. 2:8-3(b), on the ground that plaintiffs' failure to challenge the master's report at the trial level amounted to a waiver of claims about unfavorable findings. On January 24, 2001 we denied the motion without prejudice, pending final submission. [Sections II to III of this opinion have been redacted for publication purposes. See R. 1:36-2(d).]

IV

Discussion of Issues
1. Failure to object to master's findings as barring appeal.
Muirfield claims that St. Joseph's appeal must be dismissed because plaintiffs failed to protest the master's report at the trial level, as required by R. 4:41-5(b) and by the Law Division judge's own order referring this case to the master and then reviewing his report. Muirfield argues that the Rule parallels federal procedural rules which have been held to require parties to file objections to a master's report in order to preserve their right to appeal the master's factual findings and legal conclusions. Muirfield further argues that New Jersey case law forbids appellate consideration of errors not raised at the trialcourt level unless they implicate jurisdiction or matters of great public interest, and that plaintiffs' advocacy for the report in the Law Division, when they were opposing Muirfield's and Gerard's motions for modification and various costs of suit, estops St. Joseph's from pursuing a contrary position here on appeal. We disagree with Muirfield's arguments, in particular its assessment of federal law and its implications for R. 4:41-5(b).
Rule 4:41-5(b) (the Rule) provides for objections to a master's report in a nonjury action as follows:
In an action to be tried without a jury the court shall accept the master's findings of fact unless contrary to the *656 weight of the evidence. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties and may move the court for action upon the report and the objections thereto. The court after hearing on the motion may adopt the report, modify or reject it in whole or in part, receive further evidence, or recommit it with instructions.
The consent order in this case simply tracked the Rule's language, by providing that "any party may serve written objections thereto upon the other parties and may move the Court for action upon the Report and the objections thereto" within twenty days after the filing of the master's report. After the report was issued, the parties asked the master to "clarify" certain findings, but only Gerard, which does not join in this point, protested any substantive finding. Muirfield moved in this court under R. 2:8-3(b) to dismiss St. Joseph's appeal, on the ground that plaintiffs' failure to challenge the master's report below amounted to a waiver of claims about unfavorable findings, which we denied without prejudice. We reserved on this motion pending final submission.
No published case to date has addressed whether R. 4:41-5(b) requires a party to file objections in order to preserve its right to challenge the report on appeal, either facially or by analogy to R. 2:10-1, which prohibits an appellate court from considering the issue of whether a jury verdict was against the weight of the evidence unless the appellant has moved in the Law Division for a new trial on that ground. Nor is there any case-law discussion of the contrary proposition: that objections are not mandatory to preserve the right to appeal because R. 4:41-5(b) emphasizes the court's supervisory responsibility for determining that the report comports with the weight of the evidence, regardless of whether the parties file objections. There is no indication that the single New Jersey case which Muirfield cites, Capasso v. Colonna, 96 N.J.Eq. 385, 124 A. 760 (E. & A.1924), affirming 95 N.J.Eq. 35, 122 A. 378 (Chanc.1923), addressed a context resembling that of the Rule.
Muirfield's first alternative argument, that St. Joseph's is estopped because its failure to object constituted an adoption of the report's contents, is the same in substance as the argument it bases directly on the Rule. If the Rule requires an objection below and no objection is made, then any appeal is barred regardless of what the party actually thought of the report. This theory makes the additional inference that Muirfield urges of constructive "adoption" of the report superfluous. This alternative argument presumes that plaintiffs knew their failure to object would preclude an appeal, which is questionable. In their opposition to the counsel-fee motions, and to the motion for reconsideration which they attributed only to Gerard, plaintiffs protested the unfairness of giving Muirfield and Gerard a chance in effect to retry this case, whether before the court or the master, or both. On the basis that any party's challenge to the master's report "should proceed to the Appellate Division," plaintiffs "submitted" the report for "acceptance" in "the form of a Final Judgment," so that "all parties are free to pursue an Appeal." It is thus uncertain whether plaintiffs would have "adopted" the report, as Muirfield argues, if they believed that this might serve as a waiver of objections and of the right to appeal.
Muirfield's second alternative argument, that appellate courts refuse to hear issues not raised below unless they implicate jurisdiction or a matter of great public interest, is not germane. In this case neither the parties nor this court would be disadvantaged *657 by having to address any matter that lacked a full presentation, whether to the master or the court. The cases Muirfield cites for that argument are qualitatively distinguishable because they involved the assertion on appeal of issues that had not been raised below at all, unlike in this case, where all the issues were fully tried, and no party has been prejudiced on appeal by surprise or a lack of opportunity to prepare. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35, 300 A.2d 142, 145 (1973) (question was not "properly presented" below because record was less complete than on appeal, but was nonetheless remanded because case also had legal questions that "would have to be remanded in any event"); Solondz v. Kornmehl, 317 N.J.Super. 16, 22, 721 A.2d 16, 19 (App.Div.1998) (factual issue about negotiations over a contract provision was not raised below); Skripek v. Bergamo, 200 N.J.Super. 620, 629, 491 A.2d 1336, 1341 (App.Div.) (claim that a surgical procedure performed without consent constituted battery was not raised below), certif. denied, 102 N.J. 303, 508 A.2d 189 (1985); Abel v. Bd. of Works of City of Elizabeth, 63 N.J.Super. 500, 509-10, 164 A.2d 764, 769-70 (App.Div.1960) (claim that ordinance and master plan were improperly enacted was not raised below; court considered it only because it was a matter of public importance).
Muirfield cites two federal rules of procedure and one federal statute for their similarity to R. 4:41-5(b) which it argues mandate preclusion of appeals for failure to object to a report below. One of the federal procedural rules, Fed.R.Civ.P. 53(e)(2), is all but identical to R. 4:41-5(b), most notably in failing to indicate whether a party may appeal after failing to object to the master's report:
In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.
The other federal procedural rule that Muirfield cites, Fed.R.Civ.P. 72(b), is not as similar to R. 4:41-5(b), because it applies to "pretrial" matters referred to a "magistrate judge" without the parties' consent, rather than an "action to be tried" as in R. 4:41-5(b), to a master and upon consent. Another difference is that, while Fed.R.Civ.P. 72(b) permits the court to adopt, modify, or reject the magistrate's report, it adds a requirement of de novo review for findings to which a party objected:
A magistrate judge assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement shall promptly conduct such proceedings as are required.... The magistrate judge shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate....
... Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.... The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate *658 judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.
The conditions and standards set forth in those last four sentences also appear in the federal statute that Muirfield cites, 28 U.S.C.A. § 636(b)(1). That statute is part of the enactment under which federal magistrates are appointed to full-time office by United States District Court judges, 28 U.S.C.A. §§ 631-36, unlike masters in New Jersey, whom the Superior Court judges appoint for one case. R. 4:41-1 to R. 4:41-3.
The United States Supreme Court has declared that, under 28 U.S.C.A. § 636(b)(1), a United States Circuit Court of Appeals "may exercise its supervisory powers to establish a rule that the failure to file objections to the magistrate's report waives the right to appeal the district court's judgment." Thomas v. Arn, 474 U.S. 140, 142, 106 S.Ct. 466, 468, 88 L.Ed.2d 435, 440 (1986). Such a rule would reflect broad reasons of judicial economy and not subject trial courts to reversal without notice and the first opportunity to correct the magistrate's errors. Id. at 146-48, 106 S.Ct. at 470-71, 88 L.Ed.2d at 443-44. However, the Supreme Court said nothing to indicate that the statutory language mandated such a rule, and the subsequent federal cases that Muirfield cites rely on a circuit rule found permissible under the statute but not mandated by it. Wells v. Shriners Hosp., 109 F.3d 198, 199-200 (4th Cir.1997); F.D.I.C. v. Hillcrest Assocs., 66 F.3d 566, 569 (2d Cir.1995); Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir.1995) (relying on Egert v. Conn. Gen. Life Ins. Co., 900 F.2d 1032, 1039 (7th Cir.1990), which was to that effect); Moore v. U.S., 950 F.2d 656, 659 (10th Cir.1991).
Indeed, the Supreme Court in Thomas discussed without criticism another case Muirfield relies upon, U.S. v. Walters, 638 F.2d 947 (6th Cir.1981), in which the Sixth Circuit upheld its local rule mandating objections to a magistrate's report, but applied it only prospectively. Thomas, 474 U.S. at 145-46, 106 S.Ct. at 470, 88 L.Ed.2d at 442. In Walters, the government sought forfeiture of weapons that a firearm dealer held for sale without a license, but then, after an evidentiary hearing before a magistrate, failed to object to the magistrate's report. 638 F.2d at 948-49. The Sixth Circuit's reasons for prospective application were (1) the "rules of procedure should promote, not defeat the ends of justice," (2) the government had a "plausible" argument that the statute's lack of an explicit requirement for objections made their filing optional, and (3) "our rule was not invariably anticipated." Id. at 950.
As for whether Fed.R.Civ.P. 53(e)(2) prohibits appeals for failure to object to a magistrate's report, Muirfield does not cite any cases, and we find only one on point, Stone v. City of San Francisco, 968 F.2d 850 (9th Cir.1992), cert. denied, 506 U.S. 1081, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993). In Stone, the Ninth Circuit simply declared the appellant barred under Fed.R.Civ.P. "53(e)" for failure to object to the factual findings in the magistrate's report. Id. at 858. However, in doing so, it relied on Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.1991), which stated that "the language" of 28 U.S.C.A. §§ 631-36 "does not require a rule of waiver," and thus authorized the Ninth Circuit's intermediate position, which was a Circuit rule that "parties who do not object to a magistrate's report waive their right to challenge the magistrate's factual findings but *659 retain their right to appeal the magistrate's conclusions of law."
The logic of the federal cases do not require R. 4:41-5(b) to be interpreted in a manner that precludes appeals for failure to object in the Law Division to the master's report. We conclude that it would even prohibit such an interpretation in the absence of language clearly indicating that consequence, such as the language used in the Circuit rules we have discussed. Rule 4:41-5(b), as currently written, does not give so clear an indication that objections are mandatory and that their absence will preclude appeal. Unlike a new trial motion pursuant to R. 4:49-1(c), which a court "may" order on its own motion, but is not compelled to order in the absence of a party's motion, R. 4:41-5(b) states that a court in a non-jury case "shall" accept the master's factual findings "unless contrary to the weight of the evidence." The Rule does not link that requirement to the objections that the parties "may" make to the master's report. The court has a direct responsibility to review the report and in effect certify its accuracy at least to the extent of not being against the weight of the evidence, and it has that responsibility regardless of whether any party files an objection. Although the absence of party objections may be an indication of the report's acceptability, it was nonetheless the Law Division judge's, here Judge Humphreys, supervisory duty to make such an assessment himself. The supervisory responsibility of a New Jersey trial judge is also greater than that of a federal trial judge, because a master who is appointed for one case, while presumably capable, is still not a career professional, like federal magistrate judges.
For those reasons, the Rules should not encourage courts to abdicate their supervisory duty over a master, or in effect delegate it to the parties, by simply relying on the parties' failure to object as a sufficient basis for accepting the report. A further reason is that R. 4:41-5(b) does not paraphrase or refer to R. 2:10-1, which requires a party wishing to appeal a jury verdict as against the weight of the evidence, the same standard as in R. 4:41-5(b), to preserve the appeal with a motion in the Law Division for a new trial on that ground.
Even if we were inclined to declare that judicial economy and fairness to trial judges require R. 4:41-5(b) to apply so as to bar appeals for failure to object to the master's report, we think that applying the Rule in such a manner to this case rather than prospectively only is inappropriate. There are several reasons, including the novelty of the issue in New Jersey and the attendant lack of notice to the parties. The uncertainty about whether plaintiffs knowingly waived the right to challenge the report on appeal, when they arguably saw "submitting" it for "acceptance" as merely a procedural step needed to expedite the appeal and the absence of surprise to any party, because all issues were fully tried below, counsels us to reject the preclusionary contention.
A further reason not to apply the Rule in such a manner here is that most of the issues presented will remain before us in Gerard's cross-appeal, even if Muirfield's cross-appeal were dismissed along with St. Joseph's on the ground that Muirfield similarly failed to object below to the master's report. Muirfield implies that it joined in Gerard's April 5, 2000 motion for reconsideration, but the motion in which Muirfield supposedly joined in Gerard's reconsideration claim was the motion that Muirfield made for counsel fees, and which it had filed five days earlier than Gerard's motion for reconsideration. Muirfield's counselfees motion stated that Muirfield "seeks a similar ruling with respect to the relief *660 sought by [Gerard] in its affirmative motion to the extent Gerard's claim for relief must `pass through' Muirfield." From the beginning of this case and for all purposes, Muirfield was concerned about its ability to "pass through" Gerard's claims to plaintiffs. It would have been unremarkable for Muirfield to voice that concern again in connection with a claim by Gerard that addressed only counsel fees. Gerard's notice of motion for reconsideration did not refer to Muirfield. The court's opinion on the motions for counsel fees and for reconsideration identifies only Gerard as the movant, also with no mention of Muirfield. Finally, neither the opinion nor the parties' papers on reconsideration indicate a recognition that a party's failure to challenge the report in the Law Division might preclude it from appealing.
In addition to the possible unseemliness of granting this claim to Muirfield's benefit when its own satisfaction of the objection requirement is dubious, such application of the Rule would make it difficult to treat the parties equally. We would have to choose between 1) dismissing Muirfield's cross-appeal as well as St. Joseph's appeal for failure to object below, which would mean denying Muirfield preclusionary relief, or 2) retaining Muirfield's cross-appeal on the ground that its essentially joint conduct of this litigation with Gerard lets Gerard's objection below also serve as Muirfield's, which would mean treating Muirfield and St. Joseph's differently even though they acted under similar misapprehensions.
For all those reasons, we reject this claim. We do recommend that the Civil Practice Committee may wish to study the matter with an eye to suggesting a clarifying amendment to the Supreme Court. [The remaining sections of this opinion have been redacted for publication purposes. See R. 1:36-2(d).]
Affirmed.
NOTES
[1] St. Joseph's does not challenge the master's award of interest on the tort claims, even though St. Joseph's and Blanchard's common defense made the tort claims distinguishable from the contract claims only in theory.