842 A.2d 895

WENDY GRECZYN AND STEVEN FISHMAN, PLAINTIFFS–APPELLANTS, v. COLGATE–PALMOLIVE, KLING LINDQUIST, DEFENDANTS–RESPONDENTS,JOHN DOES (1–10) AND ABC CORPS. (1–10), DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 5, 2004—Decided March 10, 2004.

386

Before Judges WEFING, COLLESTER and FUENTES.

*Jared P. Kingsley* argued the cause for appellant (*Bumgardner, Ellis, McCook & Kingsley*, attorneys; *Mr. Kingsley*, on the brief).

*Andrew J. Carlowicz* argued the cause for respondent *Kling Lindquist* (*Hoagland, Longo, Moran, Dunst & Doukas*, attorneys; *Mr. Carlowicz*, of counsel and on the brief).

Respondent *Colgate–Palmolive* did not participate in this appeal.

The opinion of the court was delivered by

WEFING, J.A.D.

Plaintiff[1] appeals from a trial court order dismissing her complaint for having been untimely filed. Resolution of this appeal requires that we determine whether an architect who is named as

---

[1] Plaintiffs are Wendy Greczyn and her husband Steven Fishman, who sued per quod. Within this opinion, we shall refer only to plaintiff.

a defendant beyond the ten-year period permitted by *N.J.S.A.* 2A:14–1.1 is nonetheless subject to suit under the principles of fictitious party practice and relation back. After carefully reviewing the record in light of the contentions advanced on appeal, we conclude he is not and thus affirm.

On March 11, 1999, plaintiff tripped and fell on a staircase located within the Colgate–Palmolive office complex in Piscataway. She filed suit on October 3, 2000, to recover damages for injuries she alleged she received in that fall. Plaintiff was employed by Colgate–Palmolive and she joined it as a defendant for discovery purposes only. *Davila v. Cont'l Can Co.,* 205 *N.J.Super.* 205, 500 *A.2d* 721 (App.Div.1985).

She named as additional defendants John Does, 1 through 20, and ABC Corps., 1 through 20. Within the body of her original complaint, she described John Does and ABC Corps. 11 through 20 as having designed and constructed the staircase upon which she fell. Through discovery, she learned that defendants Kling Lindquist had served as the architects who were involved in the renovation and construction which resulted in the staircase upon which she fell. Discovery also revealed that the renovation and construction project was substantially completed by November 1990.

In October 2001 she filed a motion to amend her complaint to substitute Kling Lindquist as a defendant. Her motion was granted and shortly thereafter, in December 2001, she filed her amended complaint.

Kling Lindquist, relying on our ten-year statute of repose, *N.J.S.A.* 2A:14–1.1, moved for summary judgment. The trial court granted the motion, rejecting plaintiff's argument that the amended complaint, filed more than one year beyond the ten-year limit, should be deemed to relate back to the filing of the original complaint. Plaintiff has appealed from the resultant order.

*N.J.S.A.* 2A:14–1.1 provides in pertinent part:

> No action whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction.

██ This statute is not a statute of limitations but, rather, a statute of repose. *Ebert v. S. Jersey Gas Co.*, 157 *N.J.* 135, 138, 723 *A.*2d 599 (1999) (holding that a service line leading from a gas main is an improvement to real property and its installer was not subject to suit when the line exploded more than ten years after installation); *Rosenberg v. Town of N. Bergen*, 61 *N.J.* 190, 199, 293 *A.*2d 662 (1972) (paving contractors not subject to suit for fall which occurred more than thirty years after completion of their work); *Diana v. Russo Dev. Corp.*, 352 *N.J.Super.* 146, 150, 799 *A.*2d 689 (App.Div.2002) (general contractor not subject to suit when decedent fell from hatch and ladder installed more than ten years earlier); *Hein v. GM Const. Co.*, 330 *N.J.Super.* 282, 286, 749 *A.*2d 422 (App.Div.2000) (noting that "[a] statute of repose is not really a statute of limitations at all, at least in the traditional understanding of that term").

██ A statute of limitations computes the period within which an action must be commenced from the accrual of the cause of action. *E.A. Williams, Inc. v. Russo Dev. Co.*, 82 *N.J.* 160, 167, 411 *A.*2d 697 (1980) (holding, prior to 2001 amendment, that error in survey did not create a defective and unsafe condition and thus *N.J.S.A.* 2A:14–1.1 inapplicable). A statute of repose, on the other hand, operates without regard to the accrual of a cause of action. A statute of repose

> does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has

been done is *damnum absque injuria*—a wrong for which the law affords no redress.

[*Rosenberg, supra,* 61 *N.J.* at 199, 293 *A.*2d 662.]

Under *N.J.S.A.* 2A:14–1.1, "[i]njury occurring more than ten years after the performance of the negligent act simply forms no basis for recovery." *E.A. Williams, supra,* 82 *N.J.* at 167, 411 *A.*2d 697.

In *Rosenberg,* Justice Mountain noted that the statute had been enacted in response to then-recent developments in the law which had the effect of substantially expanding the potential scope of liability of those involved in the design and construction of improvements to real property. He cited, for instance, the development of the discovery rule, under which a cause of action is held not to accrue until the plaintiff discovered what had occurred. 61 *N.J.* at 195–97, 293 *A.*2d 662. He also cited the Court's earlier opinion in *Totten v. Gruzen,* 52 *N.J.* 202, 245 *A.*2d 1 (1968), which rejected the completed and accepted rule, thus also expanding the potential period of liability. *Id.* at 197–98, 245 *A.*2d 1. In *O'Connor v. Altus,* 67 *N.J.* 106, 118–19, 335 *A.*2d 545 (1975), Justice Clifford noted that the Court's earlier imposition of strict liability upon a mass developer of houses in *Schipper v. Levitt & Sons, Inc.,* 44 *N.J.* 70, 207 *A.*2d 314 (1965), also was a factor in the Legislature's decision to enact this statute of repose.

The background which led to the enactment of such legislation in a majority of the states is noted in Margaret A. Cotter, Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non–Action,* 18 *Cath. U.L.Rev.* 361 (1969). Such statutes have been challenged on a variety of grounds, with differing results. Cases are collected in Martha Ratnoff Fleisher, Annotation, *Validity as to Claim Alleging Design or Building Defects, of Statute Imposing Time Limitations Upon Action Against Architect, Engineer, or Builder for Injury or Death Arising Out of Defective or Unsafe Condition of Improvement to Real Property,* 2002 *A.L.R.* 5th 21 (2002).

Because *N.J.S.A.* 2A:14–1.1 is a statute of repose as opposed to a statute of limitations, its ten-year period cannot be

enlarged because the injured party is a minor. *O'Connor, supra,* 67 *N.J.* at 123, 335 *A.*2d 545 (holding that "the legislature did not intend the ten-year period after construction to be 'expanded' by reason of one's infancy.") Similarly, its ten-year period cannot be expanded because the defect in construction is latent and concealed through subterfuge. *County of Hudson v. Terminal Constr. Corp.,* 154 *N.J.Super.* 264, 268–69, 381 *A.*2d 355 (App.Div. 1977), *certif. denied,* 75 *N.J.* 605, 384 *A.*2d 835 (1978).

■ A statute of repose such as *N.J.S.A.* 2A:14–1.1 serves a different purpose than does a statute of limitations.

> Statutes of limitations serve to protect against the litigation of stale claims, stimulating diligent prosecution of claims, penalizing dilatoriness, and serving as a measure of repose. The purpose of the statute of repose is to provide a measure or [sic] repose and prevent liability for life against contractors and architects.
>
> [*Hein, supra,* 330 *N.J.Super.* at 286, 749 *A.*2d 422 (citations omitted).]

■ Balanced against these considerations is the procedural technique of fictitious party practice incorporated in *R.* 4:26–4. Where a plaintiff, despite diligent efforts, has been unable to ascertain the identity of a defendant potentially responsible for the harm incurred, he may sue that defendant utilizing a fictitious name.[2] Thereafter, if the plaintiff has been able to learn the true identity of the allegedly culpable party, the complaint may be amended, even after the statute of limitations has run, to substitute the defendant's true name and effect service on him, particularly where the defendant can show neither prejudice resulting from nor reliance upon the lapse of time. *Farrell v. Votator Div. of Chemetron Corp.,* 62 *N.J.* 111, 122–23, 299 *A.*2d 394 (1973); *Stegmeier v. St. Elizabeth Hosp.,* 239 *N.J.Super.* 475, 484–86, 571 *A.*2d 1006 (App.Div.1990).

---

[2] The record is silent on what efforts, if any, plaintiff made to discover the identity of those involved in this renovation and construction project prior to instituting suit. The parties and the trial court focused solely on the legal question whether the doctrine of relation back, through fictitious party practice, is applicable to *N.J.S.A.* 2A:14–1.1.

■ Plaintiff contends the same result should obtain here, thus permitting her to amend her complaint after the statute of repose has concluded. We are unable to agree.

Plaintiff stresses that her original complaint was filed within the ten-year period set by *N.J.S.A.* 2A:14–1.1. She argues that Kling Lindquist was thus timely joined as a defendant, although not identified beyond the John Doe designation. Were we to adopt such a position, however, it would result in the complete evisceration of the period of repose the Legislature intended to confer.

Research has not led to a reported New Jersey opinion which has discussed the question. Plaintiff points to cases under the Wrongful Death Act, *N.J.S.A.* 2A:31–1 to –6, which have permitted the use of fictitious party practice and amendment of complaints after the statutory period of limitations. *Estate of Vida ex rel. Kesciova v. City of Garfield,* 330 *N.J.Super.* 225, 749 *A.*2d 391 (App.Div.2000); *Brown v. Kennedy Mem'l Hosp.—Univ. Med. Ctr.,* 312 *N.J.Super.* 579, 711 *A.*2d 1370 (App.Div.), *certif. denied,* 156 *N.J.* 422, 719 *A.*2d 1021 (1998).

We consider both cases distinguishable. In *Vida,* although we noted that the two-year period within which a wrongful death act must be commenced is "a substantive statute of limitations [which] conditions not only the remedy but also the right," 330 *N.J.Super.* at 228–29, 749 *A.*2d 391 [3], we stressed that defendant had actual notice prior to the expiration of the statute of plaintiff's claim and that plaintiff would be seeking leave to amend the complaint to join defendant as a party. We reviewed the steps plaintiff had taken to identify the manufacturer of the product in question and determined that the doctrine of substantial compliance precluded dismissal of plaintiff's complaint. *Id.* at 230, 749 *A.*2d 391.

We also consider *Brown* inapplicable to the present question. The issue in *Brown* revolved around whether plaintiff had made sufficient efforts to identify the party to come within the scope of

---

[3] This statement was made prior to the Supreme Court's opinion in *LaFage v. Jani,* 166 *N.J.* 412, 766 *A.*2d 1066 (2001).

*R.* 4:26–4. As we noted, however, the sufficiency of plaintiff's efforts is not in question here. There is no indication in *Brown* that any party ever challenged whether fictitious party practice could serve to permit the amendment of the complaint past the statutory period of limitations.

The Supreme Court has recently, in *LaFage v. Jani,* 166 *N.J.* 412, 766 *A.*2d 1066 (2001), considered the nature of the limitations period contained in our wrongful death statute. In *LaFage,* the Court held that despite prior descriptions of *N.J.S.A.* 2A:31–3 as a "substantive" statute of limitations, *Negron v. Llarena,* 156 *N.J.* 296, 300, 716 *A.*2d 1158 (1998), it is rather "procedural" in nature and thus subject to equitable principles. The Court specifically held that the two-year period of limitations could be equitably tolled for the minor children of a decedent.

The Supreme Court, however, has clearly held that *N.J.S.A.* 2A:14–1.1, the statute of repose, is not procedural in nature but, rather, substantive. *Rosenberg, supra,* 61 *N.J.* at 199, 293 *A.*2d 662. The Court has also explicitly held, moreover, that under *N.J.S.A.* 2A:14–1.1 the ten-year period of limitations is not tolled by the minority of a plaintiff. *O'Connor v. Altus, supra,* 67 *N.J.* at 123, 335 *A.*2d 545. Plaintiff's attempt to analogize to the wrongful death statute is inapt.

One other case must be noted, for it discusses the concept of relation back in the context of *N.J.S.A.* 2A:14–1.1. *In re Sharps Run Assocs.,* 157 *B.R.* 766 (Bankr.D.N.J.1993) was an appeal from an order of the Bankruptcy Court which permitted a receiver's cross-claim against certain limited partners to relate back to the filing of a creditor's original complaint against those limited partners. Among the reasons asserted by the limited partners in opposition was the contention that the statute under which the claim was made was a statute of repose and not a statute of limitations. The court rejected that contention, expressing the view that it was a statute of limitations. It then proceeded, nonetheless, in dicta to discuss the nature of a statute of repose

and concluded that there was nothing inherent to such a statute which would preclude the doctrine of relation back.

We concur that there is nothing intrinsic to a statute of repose which would preclude utilization of the doctrine of relation back in all instances. We perceive a significant distinction between an amendment beyond the period of repose which asserts additional claims against an existing named party, *Castro v. Bellucci*, 338 *Ill.App.*3d 386, 273 *Ill.Dec.* 610, 789 *N.E.*2d 784 (2003), and an amendment beyond the period of repose which substitutes a newly identified party for a John Doe defendant. It is the latter situation which confronts us here.

Because we have found no reported authority in New Jersey, we have looked to other states for guidance. Both Alabama and Massachusetts have had occasion to consider the impact, if any, of fictitious name practice upon a complaint that is amended after the period of repose has expired. They have, however, come to opposite conclusions.

The Supreme Court of Alabama has recently addressed the question twice, in *Oliver v. Woodward*, 824 *So.*2d 693 (2001), and *Marsh v. Wenzel*, 732 *So.*2d 985 (1998), both medical malpractice actions. Alabama has a statute which combines both a period of limitations and a period of repose for medical malpractice actions. *Marsh, supra,* 732 *So.*2d at 987. Under the statute, a party may commence such an action within two years of the alleged negligence but if the party is unaware of the cause of action and could not reasonably have discovered it within two years, he may commence suit within six months of the discovery but "in no event may the action be commenced more than four years after" the alleged negligence. *Ibid.*

Dixie Marsh had a mass in her left breast and underwent a biopsy in March 1993, the results of which were reported as benign. *Id.* at 986. In September 1993, she underwent surgery to have the mass removed. Testing proved it to be malignant. Her subsequent treatment included a mastectomy, chemotherapy

and a bone-marrow transplant. *Ibid.* She commenced suit in March 1995 against the surgeon, alleging he was negligent in not removing the mass earlier and she included fictitious parties as defendants. *Ibid.* In April 1997 further testing determined that cells removed during the original biopsy were indeed malignant and in June 1997 she amended her complaint to substitute the physician who performed that biopsy for one of the fictitiously-named defendants included in the original complaint. *Id.* at 987. The trial court granted that physician summary judgment on the ground that the suit against him was barred by the four-year rule of repose. *Ibid.* Although the Supreme Court of Alabama affirmed the result, it did so on different grounds. In the Court's view, the failure of Alabama's statute of limitations/repose to "expressly exclude the availability of fictitious-party practice and its doctrine of relation back" indicated that it was permitted. *Id.* at 988. The Court concluded, however, that plaintiff was not entitled to employ the doctrine because she could not reasonably be deemed to be ignorant of the name of the physician at the time she commenced her action. *Id.* at 990.

We do not consider the analysis adopted by the Alabama Supreme Court persuasive in this matter. In New Jersey the doctrine of relation back and fictitious party practice are not statutory topics but are rather dealt with in our rules of civil practice. That *N.J.S.A.* 2A:14–1.1 does not refer either to fictitious party practice or to the doctrine of relation back cannot be deemed an indication of legislative approval of such pleading techniques.

Three years later, the Alabama Supreme Court did permit a plaintiff to rely upon fictitious-party practice and the doctrine of relation back in *Oliver v. Woodward, supra.* In that case, despite plaintiff's diligent efforts, she was unable to learn the identity of the doctor who had initially cleared a central venous catheter for use until more than four years after the event. That improper placement led to a thrombosis which resulted in a partial amputation of her right arm. Once she learned his identity, she promptly

amended her complaint to name him as a defendant. Because she was diligent in seeking his identity and prompt in acting once it was known, the Court applied the doctrine of relation back and thus her complaint was timely. *Oliver, supra,* 824 *So.2d* at 699.

Massachusetts, on the other hand, takes a contrary view. *Tindol v. Boston Hous. Auth.,* 396 *Mass.* 515, 487 *N.E.*2d 488 (1986), is illustrative. In that case, a minor and her mother commenced suit in 1979 against the Boston Housing Authority for injuries the daughter received in December 1976 when she was scalded with excessively hot water. In 1984, they sought to amend the complaint to add architects and engineers as defendants. Massachusetts has a six-year statute of repose for suits arising from improvements to real property. The Massachusetts Supreme Judicial Court concluded that the doctrine of relation back does not apply to a statute of repose and ruled that the architects and engineers were entitled to a dismissal.

Massachusetts has recently restated its view that relation back cannot be employed in the context of a statute of repose. *Nett v. Bellucci,* 437 *Mass.* 630, 774 *N.E.*2d 130, 134–35 (2002). Massachusetts also has a statute which combines elements of a statute of limitations and a statute of repose for medical malpractice actions on behalf of a minor. Under this statute, suit must be brought within three years of accrual of the cause of action "except that a minor under the full age of six years shall have until his ninth birthday in which the action may be commenced, but in no event shall any such action be commenced more than seven years after" the alleged negligence. *Id.* at 134.

The plaintiffs began suit in federal court in April 1996 seeking damages for the injuries Aaron Nett received during his birth on April 2, 1992. Aaron was significantly larger at birth than the obstetrician, based upon an ultrasound reading performed a week prior to his birth, had anticipated. The obstetrician had not been prepared to deal with the attendant complications which developed. Despite diligent efforts, the ultrasound films were not located until February 1999, all parties having believed they were

destroyed. In March 1999, plaintiffs moved to amend their complaint, to join the radiologist who initially read the films.

The District Court granted the radiologist's motion to dismiss, concluding that the amended complaint was untimely because it was not filed until more than seven years after the radiologist had read the ultrasound films. Plaintiffs appealed and the Court of Appeals certified two questions to the Massachusetts Supreme Judicial Court: under Massachusetts law what is the operative date an action commences for purposes of the statute of repose and, if it is the date of filing of a motion for leave to amend, do the policies underlying a statute of repose require that the motion for leave to amend have been properly filed in accordance with rules of practice.

The Massachusetts Supreme Judicial Court responded that for purposes of the statute of repose, an action is deemed to commence on the date a motion for leave to amend is filed. It also stated that it is not material for purposes of the statute of repose if the initial motion papers may have been technically non-compliant in certain regards.

Within the course of its opinion, the Court noted that under Massachusetts law, "amended pleadings for claims subject to a statute of repose [do not] relate back to the original pleadings [because doing so] 'would have the effect of reactivating a cause of action that the legislature obviously intended to eliminate.'" *Id.* at 135 (quoting *Tindol, supra,* 487 *N.E.*2d at 491).

We have concluded, on balance, that *Tindol* and *Nett* represent the better line of cases and decline to follow *Marsh* and *Oliver.* We reject the dicta in *Sharps Run* which disagreed with *Tindol.* We reach this result for several reasons.

Although *LaFage, supra,* and *Negron, supra,* represent significant expansions of the limitation of wrongful death actions, we have already noted that we do not consider such actions an appropriate analogy to actions relating to improvements to real property.

We also note that New Jersey courts have consistently recognized a substantive distinction between *N.J.S.A.* 2A:14–1.1 and statutes of limitation. The silence of the Legislature in the face of decisions such as *O'Connor v. Altus, supra,* (no tolling for minority) and *County of Hudson v. Terminal Construction Corp., supra,* (discovery rule inapplicable) is a clear indication that the legislative policy and intent is to apply the statute of repose strictly. *Cavuoti v. New Jersey Transit Corporation,* 161 *N.J.* 107, 133, 735 *A.*2d 548 (1999) ("[W]hen a statute has been judicially construed, the failure of the Legislature subsequently to act is evidence of legislative acquiescence in the construction given to the statute."). Application of fictitious party practice and the doctrine of relation back would ignore that legislative intent.

Further, we perceive a significant distinction in the nature of construction-related litigation and other litigation. Defects in construction often do not manifest themselves for years and it can be difficult to identify the causes and responsible parties.

In *Broadway Maintenance Corp. v. Rutgers,* 90 *N.J.* 253, 447 *A.*2d 906 (1982), the Court dealt with issues springing from construction contracts executed fifteen years earlier. In *St. Joseph's Hospital v. Muirfield Construction,* 362 *N.J.Super.* 540, 829 *A.*2d 652 (App.Div.2003), we analyzed rights and obligations under a contract executed seventeen years earlier. In *Ramapo Brae Condominium Ass'n v. Bergen County Housing Authority,* 328 *N.J.Super.* 561, 746 *A.*2d 519 (App.Div.2000), *aff'd,* 167 *N.J.* 155, 770 *A.*2d 253 (2001), we considered claims relating to construction of an affordable housing development in Mahwah. The litigation had been in progress for more than seven years at the time we issued our opinion in which we reversed and remanded for additional proceedings. While none of these cases related to *N.J.S.A.* 2A:14–1.1, they are illustrative of the delays and hurdles frequently encountered in construction litigation.

In enacting *N.J.S.A.* 2A:14–1.1, the Legislature made a policy decision that those involved in the design, planning, construction or supervision of an improvement to real property were entitled to

the security afforded by a bright-line statute of repose. We have earlier noted certain of the factors which led the Legislature to this choice. We reject plaintiff's contention that we should permit fictitious party practice and the doctrine of relation back and have our trial courts deal with individual assertions of prejudice and unfairness. In our judgment, it was just such individual determinations that the Legislature sought to avoid when it enacted *N.J.S.A.* 2A:14–1.1. Inviting such analyses would be contrary to that intent.

The order under review is affirmed.