**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0268-15T1

MICHAEL BESEN,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

SANDRA WEISS,

    Defendant-Respondent/
    Cross-Appellant.

_____

Argued June 1, 2017 — Decided August 29, 2017

Before Judges Fuentes, Carroll and Farrington.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1842-08.

Steven M. Resnick argued the cause for appellant/cross-respondent (Ziegler & Zemsky, LLC, attorneys; Mr. Resnick, on the briefs).

Paul A. Rowe and Stephanie G. Reckord argued the cause for respondent/cross-appellant (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Mr. Rowe, of counsel and on the brief; Ms. Reckord and Leslie A. Barham, on the briefs).

PER CURIAM

Plaintiff Michael Besen is the father of two children, who are now both over the age of majority. Defendant Sandra Weiss is the children's mother and plaintiff's former wife. Plaintiff filed a complaint in the Law Division against defendant, predicated on the tort of intentional infliction of emotional distress, aiding the commission of a tort, and civil conspiracy. Plaintiff alleged defendant intentionally or recklessly engaged in extreme and outrageous conduct designed to undermine his relationship with his children. He alleges that as a proximate cause of defendant's outrageous and intentional acts, his relationship with his children as a parent has been irreparably destroyed. Plaintiff seeks compensatory and punitive damages against defendant and other unidentified individuals under the fictitious party rule.[1]

In response to plaintiff's appeal, we are asked to determine whether the Law Division correctly applied this court's decision in Segal v. Lynch, 413 N.J. Super. 171 (App. Div.), certif. denied, 203 N.J. 96 (2010), to transfer this cause of action to the Chancery Division, Family Part. As a corollary to this threshold question, we are asked to determine whether the Family Part erred

---

[1] "'The purpose of [the fictitious party rule] is to render timely the complaint filed by a diligent plaintiff, who is aware of a cause of action against an identified defendant but does not know the defendant's name.'" Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 299 (App. Div. 2010) (quoting Greczyn v. Colgate-Palmolive, 183 N.J. 5, 11 (2005)); see also R. 4:26-4.

when it granted defendant's motion to dismiss plaintiff's complaint as a matter of law under Rule 4:6-2(e). Finally, we must determine whether the Family Part erred in awarding defendant counsel fees under Rule 5:3-5(c). In her cross-appeal, defendant argues the trial court erred when it denied her applications for sanctions pursuant to N.J.S.A. 2A:15-59 and Rule 1:4-8. Independent of this issue, defendant also argues the amount of counsel fees the Family Part awarded her under Rule 5:3-5(c) was arbitrarily determined and did not include the time spent by defense counsel to transfer the case from the Law Division to the Family Part.

After reviewing the record developed before the trial court, we affirm the Law Division's February 6, 2015 order transferring plaintiff's complaint to the Family Part substantially for the reasons expressed by Judge Stephanie Ann Mitterhoff. We also affirm the order entered by Judge Michael R. Casale on April 10, 2015, which dismissed plaintiff's complaint with prejudice pursuant to Rule 4:6-2(e). We do so substantially for the reasons expressed by Judge Casale in his oral opinion delivered from the bench on April 2, 2015. With respect to defendant's cross-appeal, we affirm the July 29, 2015 final order entered by Judge Casale, which awarded defendant $25,000 in counsel fees under Rule 5:3-5(c) and denied defendant's application for the court to impose

sanctions against plaintiff under <u>N.J.S.A.</u> 2A:15-59 and <u>Rule</u> 1:4-8.

I

The parties were married from 1996 to 2008. They had two children, a boy born in April 1997 who is now twenty years old; and a girl born in June 1999, who is now eighteen years old. Plaintiff initiated divorce proceedings against defendant in February 2008. In a certification submitted to the Family Part, plaintiff attributed the "breakdown" of the marriage to "years of conflict." The matrimonial litigation that ultimately dissolved the marriage was highly contentious. Plaintiff claims defendant intentionally disparaged him and the woman with whom he was romantically involved. Of particular concern to plaintiff were defendant's allegedly incessant attempts to undermine his relationship with the children.

The Family Part entered the final dual Judgment of Divorce (JOD) on June 17, 2011. The JOD incorporated a Settlement Agreement (Agreement) that memorialized the "essential terms orally entered on the record on December 15, 2010[.]" In this Agreement, the parties "resolved all matters in connection with their marital relationship[,]" and authorized the Family Part "to

determine several open issues[.]"  The parties also waived their rights to appeal these issues, including the following:

> custody and timesharing, support of the Parties and Children, payment of obligations, equitable distribution, attorneys' fees, and, in general, the settling of any and all claims and possible claims, by one against the other, or against their respective estates, as well as any and all rights and obligations growing out of their marital relationship.

Consistent with the Agreement, the JOD contains the trial judge's determination of the matters the parties were not able to settle.  These matters involved: life insurance to secure plaintiff's obligation to pay alimony and child support; the payment of the children's unreimbursed medical expenses; the payment of the children's post-secondary education expenses; equitable distribution; and plaintiff's time with the family dog. The rest of the JOD addresses how the judge shall determine the amount and allocation of professional fees and other costs incurred by the parties in the matrimonial litigation.  We have taken the effort to describe the items on which the parties were unable to reach an agreement, and which thus required judicial determination, to illustrate the degree of acrimony and intransigence that has permeated the parties' interactions with each other and, more importantly, with their children.

The Settlement Agreement contains seventeen labeled categories, which are further broken down into subsections, the number of which varies based on the subject matter at issue. For example, the category labeled "Alimony" contains seven subsections dealing with amount, method of payment, tax implications, irrevocable termination events, marital standard of living, and the waiver of <u>pendente</u> <u>lite</u> claims.

With respect to the children, we need not have formal training in developmental psychology to appreciate the emotional difficulties and social awkwardness associated with adolescence. It is also well-documented that children experience emotional trauma as a direct result of parental disputes and acrimonious divorce proceedings. By all accounts, this divorce was especially rancorous. The parties had both the financial means and emotional disposition to engage in extensive motion practice, both pre- and post-judgment. On its face, the parenting time arrangement ultimately agreed upon has all the trappings of a highly contested, aggressively negotiated document.

There is no such thing as a model parenting time arrangement. A post-divorce plan to accommodate the needs of the children to continue to have a loving and meaningful relationship with both parents is perforce a fact-sensitive undertaking. It should be driven by the common sense, universally accepted notion that

parents must be willing to subordinate their personal interests and needs to the best interests of their children. Although a cliché, it is important to remember that we divorce spouses, not children.

The seeds of estrangement from their parents that the children in this case appear to feel today can be traced, in large part, to the emotionally sterile parenting time arrangement adopted by the parties.[2] The parties' level of dissention is demonstrably reflected in the Agreement. This carefully drafted document comprehensively addresses all of the remaining issues concerning the dissolution of the marriage. We take the time to describe the sections of the Agreement that address the parties' interactions with their children to illustrate the degree of control the parties attempted to exert, not just over themselves, but over the lives of their teenaged children.

On August 12, 2010, the Family Part entered a separate order denoted "Judgment Fixing Custody and Parenting Time." The children were thirteen and eleven years old at the time. The preamble of the Judgment states that the parties, represented by counsel, had "freely and voluntarily without duress or coercion entered into this custody and parenting time agreement[.]" The parties agreed

---

[2] It is important to emphasize that the parties were represented by counsel at all times.

A-0268-15T1

to have joint legal custody and designated defendant as "the parent of primary residence for school district designation." The document ambitiously attempts to address and provide a protocol for seemingly every conceivable event in a child's life and the corresponding point of interaction the child would have with a parent.

The Judgment is divided into Seven Articles, containing as many subsections as warranted by the subject matter. Article II, "Custody and Parenting Time," contains six subsections. Subsection 2.2 is titled "Regular Parenting Time for the Father During School Year." It provides a detailed schedule for an ostensibly typical school-year month, broken down into four weeks, with each week containing its own protocol. For example:

> Week Three: The Father shall have parenting time Friday evening[,] picking the Children up from the mother's home of the Children's activities at 6:00 p.m., until Monday morning when the Father shall deliver the Children to school (or the Mother's residence at 9:00 a.m. if school is not in session). If the Children have a scheduled school holiday on Monday following the Father's weekend with the Children, and it is the Father's holiday with the Children in accordance with holiday schedule set forth in § 3.1 infra, then the Father shall bring the Children to school Tuesday morning or the Mother's residence by 8:00 a.m. if school is not in session.

There are similar micromanagement provisions for Weeks One, Two and Four. Subsection 2.3 is titled "Regular Time For the

Father During Summer."  It provides for an equal timeshare arrangement for the parents, followed by a description of where and with whom the children will be "between the last day of school in June of each year and the commencement of school[.]"  Article III[3] describes "Holiday Parenting Time."  It provides a shared holiday schedule varying each year based on whether it is an odd or even number year.  For example, if the father had Martin Luther King Day in 2010, it would alternate to the mother in 2011.  The only holidays that were not subject to this alternating schedule were Mother's Day and Father's Day.  This arrangement was meticulously described in a chart divided into four vertical columns and four horizontal boxes.  The first box identified the holiday; the second box identified the year; and the third and fourth boxes identified the parent.  The chart contained a total of seventeen columns.

Article VI covered "Dispute Resolution."  It appointed a parenting coordinator to resolve "significant disputes" arising under the parenting plan that the parties are unable to resolve "after best efforts have been made."  The parties agreed to share the cost of the Parenting Coordinator on a 60/40 split in defendant's favor.  Subsection 6.3(d) authorized the Family Part

---

[3] The Judgment actually uses the number 3.  We have opted to use a Roman numeral in the interest of consistency.

to sanction the party that the court finds "has used, or frustrated the dispute resolution process without good reason[.]" As a sanction, the court could "re-allocate payment for the Parent Coordinator to resolve the issue and/or award attorney's fees as appropriate."

Article VII, titled "Other Provisions[,]" covered twelve specific areas of parent/child interactions. The following subsections are particularly relevant here:

> Neither party shall do anything to alienate the [c]hildren's affections for or color their attitude toward the other. The parties shall cooperate to help the children adjust themselves to the circumstances as they now and may in the future exist. The parties agree to conduct themselves in a manner that shall be in the [c]hildren's best interests. Neither parent shall interfere with the other parent's parenting time. Both parties recognize it is in the [c]hildren's best interests that there not be excessive contact with the other parent during the other parent's parenting time. Both parties are entitled to attend the [c]hildren's scheduled activities that occur at public places.

> Each party may call the [c]hildren one time per day between 6:00 p.m. and 9:00 p.m. Both parties shall refrain from excessive text messaging and/or emails with the [c]hildren while the [c]hildren are in the other party's care. The [c]hildren's privacy in regard to their conversations with the other party, whether written or oral, shall not be invaded by either party. The parties agree to keep the other informed of cell phone and telephone numbers, e-mail addresses and residential addresses.

> *Neither party shall discuss in any form or manner with the [c]hildren or otherwise expose them, directly or indirectly, to any issue relating to any disputes between them. Further, neither party shall malign, disparage or impugn the other to or in the presence of the [c]hildren, either directly or indirectly. Each party shall foster and encourage a healthy relationship between the [c]hildren and the other party.*

[(Emphasis added).]

Finally, the Agreement the parties executed on June 17, 2011 contained the following language concerning the waiver of present and future claims:

> Except as otherwise provided herein, the [p]arties shall and do hereby mutually release and forever discharge each other from any and all suits, actions, debts, claims, demands and other obligations whatsoever in law and equity which either of them ever had, now has or may hereafter have against the other upon or by reason of any matter, cause or thing to the date of execution of this Agreement.

II

On November 21, 2014, plaintiff commenced a civil action against defendant and "other presently unknown third-parties"[4] in

---

[4] In the course of oral argument on defendant's motion to dismiss plaintiff's complaint, Judge Casale repeatedly stated that based on his experience in deciding a number of post-judgment motions, he believed the "unknown third-parties" referred to the parties' twenty-year-old son. If so, his son would be both a witness on the question of damages against defendant and a third-party

the Law Division, alleging intentional infliction of emotional distress, aiding the commission of a tort, and conspiracy. The section of the complaint denoted "Facts Common to All Counts" does not identify with particularity when the alleged conduct upon which the tort of intentional infliction of emotional distress is predicated began. Indeed, paragraphs 8, 9, 10, 11, 12, and 13 describe conduct or events that predate the JOD. Paragraphs 11, 12, and 13 illustrate this point:

> 11. In or about late 2006[,] defendant came into [plaintiff's] office, disguised in a hat and sunglasses, asked for "Ms. Ortiz[,]"[5] and then proceeded to intimidate and humiliate Ms. Ortiz in front of other office staff. It took several people to remove defendant from the building. Defendant stole Ms. Ortiz's purse[,] which contained significant private and personal information. As a result, defendant found out where Ms. Ortiz lived and the name of her nanny. Defendant then called Ms. Ortiz and left outrageously threatening messages and included the children in her hate-filled tactics.
>
> 12. In or about May 2010, defendant coached and manipulated William at his Bar Mitzvah to ignore [plaintiff] and his family and [publicly] humiliate [plaintiff] at the service.
>
> 13. In or about August/September 2011, defendant coached and manipulated William to

defendant to recover monetary damages based on the alienation of affection he caused his sister to feel against their father.

[5] "Ms. Ortiz" refers to Angela Ortiz, plaintiff's romantic interest following the breakdown of his marriage with defendant.

steal privileged email communications between [plaintiff] and his attorney from [plaintiff's] IPAD that defendant used in the parties' post-judgment litigation.

Paragraphs 14 to 20 all begin with the phrase: "At various places and times, defendant . . . ." These amorphous allegations do not, on their face, describe a cognizable prima facie case based on the tort of intentional infliction of emotional distress. The remaining paragraphs are equally ineffective. They merely describe defendant's conduct using inflammatory rhetoric but without a clearly identifiable temporal nexus. Paragraphs 21 and 22 illustrate this point:

> 21. Defendant has also intentionally undermined any Court ordered therapeutic attempts to repair the damage defendant has done to the children with purpose to keep the relationship damaged and fractured.
>
> 22. As a result of defendant's conduct, the Family Court has financially sanctioned defendant and even temporarily transferred custody from defendant to Mr. Besen. Unfortunately for the children and Mr. Besen, defendant continued her intentional actions.

By letter dated December 16, 2014, defense counsel served plaintiff's counsel with "formal notice and demand that the Complaint filed on behalf of your client . . . constitutes frivolous litigation under [Rule] 1:4-8 and N.J.S.A. 2A:15-59.1." Defense counsel apprised plaintiff's counsel that viewing the factual allegations in the complaint in the light most favorable

13

to plaintiff, the complaint did not make out a prima facie case of intentional infliction of emotional distress, aiding in the commission of a tort, or conspiracy. After citing and discussing this court's decision in <u>Segal</u>, <u>supra</u>, 413 <u>N.J. Super.</u> at 171, defense counsel also placed plaintiff's counsel on notice that this cause of action should have been brought in the Chancery Division, Family Part. Finally, defense counsel noted that plaintiff's claims were barred under the relevant two-year statute of limitations, <u>N.J.S.A.</u> 2A:14-2, as well as the parties' Settlement Agreement.

On January 7, 2015, defendant filed a motion in the Law Division to transfer this case to the Family Part. By order dated February 6, 2015, Judge Mitterhoff granted defendant's motion. She explained the legal basis for her decision in a letter-opinion attached to the order. After providing a synopsis of the parties' matrimonial history, Judge Mitterhoff held:

> <u>Rule</u> 5:1-2(a) provides that "[a]ll civil actions in which the principal claim is unique to and arises out of a family or family-type relationship shall be brought in the Family Part." Here, it is uncontested that as former spouses, the parties had a "family or family-type relationship." However, "[t]he mere fact that plaintiff and defendant were formerly wife and husband does not require that plaintiff's tort be tried in the Family Part." <u>J.Z.M. v. S.M.M.</u>, 226 <u>N.J. Super.</u> 642, 648—49 (Law Div. 1988). Where the tort is "sufficiently distinct and independent from

the cause of action for divorce and equitable distribution to permit separate adjudication without prejudicing the integrity of those adjudications," the complaint may be tried in the Law Division. <u>Brown v. Brown</u>, 208 <u>N.J. Super.</u> 372, 383 (App. Div. 1976). In contrast, when claims for intentional infliction of emotional distress are based on interference with a former spouse's relationship with the children, public policy requires that the suit must "be brought before and addressed by the Family Part as part of an action for custody or parenting time, where the governing principle for adjudication will be the best interests of these two children." <u>Segal</u>, <u>supra</u>, 413 <u>N.J. Super.</u> at 192.

Eleven days before Judge Mitterhoff entered the order transferring plaintiff's complaint to the Family Part, defendant filed a motion to dismiss plaintiff's complaint with prejudice under <u>Rule</u> 4:6-2(e). Judge Casale heard oral argument on the motion on April 2, 2015. In the course of oral argument, Judge Casale pointed out that the principal factual allegations in plaintiff's complaint overlapped with issues raised by the parties and decided by Judge Thomas P. Zampino[6] in the course of the matrimonial litigation. These decisions were included in the JOD and incorporated in the Settlement Agreement.

Judge Casale found that any claims in plaintiff's complaint that relate to prejudgment events "do not survive" after the JOD

---

[6] Judge Zampino has since retired.

and the waiver provisions in the Agreement. He also found, as a matter of law, that plaintiff's allegations post-judgment "do not reach the bar that they need to reach and that is, giving all deference and reasonable inferences to the allegations, as being true." Judge Casale found that none of the claims in the complaint "are so outrageous, not condoning the alleged conduct of the defendant, that they come anywhere near what the Appellate Division was talking about in Segal."

Although Judge Casale denied defendant's application for frivolous litigation sanctions under Rule 1:4-8, he awarded defendant partial counsel fees under Rule 5:3-5(c). He explained his reasoning in a letter-opinion dated July 29, 2015. He also provided the following explanation in support of his decision to deny defendant's application for frivolous litigation sanctions:

> This [c]ourt finds that plaintiff's claims of parental alienation cannot be described as frivolous, as this [c]ourt has previously found that defendant has a history of acting to deprive plaintiff of his relationship with his children, and never found that plaintiff was pursuing his claims to harass defendant or solely out of a malicious motive.
>
> Defendant makes a legitimate argument that the parental alienation of the ilk raised in plaintiff's complaint cannot be the basis for an intentional infliction of emotional distress claim. However, that was a close call for this [c]ourt on a motion to dismiss. This [c]ourt came very close to not granting the motion to dismiss, and allowing the

16

plaintiff to pursue discovery, at which time defendant could have renewed her motion at the conclusion of discovery. The [c]ourt found that plaintiff's claims did not arise to the level necessary for emotional damages under the Segal standard, in that defendant's parental alienation in this case did not amount to outrageous and extreme circumstances for a claim of intentional infliction of emotional distress. However, that does not mean that plaintiff's claims were frivolous, made in bad faith, with ill motive or intent. Many times [c]ourts expand doctrines in cases similar to this one. If [c]ourts were to grant the successful party's applications under the frivolous claim statute in circumstances such as this one, it would represent a chill on litigation where a litigant is frustrated by the actions of another party. For all those reasons, defendant's application to award sanctions, attorney's fees and legal expenses pursuant to Rule 1:4-8 and N.J.S.A. 2A:15-59.1 is denied by this [c]ourt.

Against this record, we will now address the parties' arguments on appeal.

### III

As a threshold issue, we affirm Judge Mitterhoff's order transferring the complaint to the Chancery Division, Family Part. Rule 4:3-1(a)(3) and Rule 5:1-2(a) provide that "[a]ll civil actions in which the principal claim is unique to and arises out of a family or family-type relationship shall be brought in the Chancery Division, Family Part." Here, it is undisputed that the allegations in plaintiff's complaint arise exclusively from

17

defendant's alleged interference with the relationship between plaintiff and his children.

Furthermore, as we made clear in <u>Segal</u>:

> As a matter of public policy, the grievances raised by plaintiff in this suit must be brought before and addressed by the Family Part as part of an action for custody or parenting time, where the governing principle for adjudication will be the best interests of these two children. In these matters, the Family Part has both the expertise and the power to correct abuses by one parent against the other, while shielding the children from the type of emotional injury that is inextricably linked to a civil action for damages.
>
> [<u>Segal</u>, <u>supra</u>, 413 <u>N.J. Super.</u> at 192.]

Because this procedural requirement is clear on its face, it does not require any further comment or elaboration.

We will next consider Judge Casale's decision to dismiss plaintiff's complaint with prejudice. Our review of a trial court's ruling on a motion to dismiss for failure to state a claim under <u>Rule</u> 4:6-2(e) is de novo. <u>Flinn v. Amboy Nat'l Bank</u>, 436 <u>N.J. Super.</u> 274, 287 n.5 (App. Div. 2014). We look to the complaint "to determine whether the allegations suggest a cause of action." <u>In re Reglan Litigation</u>, 226 <u>N.J.</u> 315, 324 (2016). Assuming the facts stated within the four corners of plaintiff's complaint are true, and granting plaintiff the benefit of all rational inferences that can be drawn from such facts, <u>see</u> <u>Green v. Morgan Properties</u>,

215 N.J. 431, 452 (2013) (citation omitted), we must determine whether plaintiff's complaint "suggest[s]" a cause of action. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989) (citations omitted). Our search must be conducted "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (citation omitted).

Applying this standard to the allegations in plaintiff's complaint, we are satisfied plaintiff failed to state a prima facie case of intentional infliction of emotional distress. We again quote from our decision in Segal:

> [T]o make out a prima facie case of intentional infliction of emotional distress, plaintiff must show that: (1) defendant acted intentionally; (2) defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant's actions proximately caused him emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."
>
> [Segal, supra, 413 N.J. Super. at 191 (quoting Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988)).]

As our examination of plaintiff's allegations reveals, the vague inflammatory language in the complaint does not describe the

type of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]" See id. at 192. We also agree with Judge Casale that a significant number of the events described in the complaint are barred by both the two-year statute of limitations, N.J.S.A. 2A:14-2, as well as the waiver provision the parties freely and voluntarily agreed to in the Settlement Agreement.

Because plaintiff failed to set forth a legally cognizable claim of intentional infliction of emotional distress, his cause of action for conspiracy and aiding the commission of a tort must also fail as a matter of law. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177—78 (2005) (holding the "gist" of a claim for civil conspiracy is not the unlawful agreement, but the underlying predicate tort); State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l., Inc., 387 N.J. Super. 469, 484 (App. Div. 2006) (explaining that a claim for aiding the commission of a tort requires proof of the underlying tort).

We now address the parties' arguments, on both direct and cross-appeal, concerning Judge Casale's decision to award in part and deny in part defendant's application for counsel fees. In determining whether a party is entitled to counsel fees under Rule 5:3-5(c), the Family Part must consider the following nine factors:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c)(1)—(9).]

Our Supreme Court distilled these factors to their essence in Mani v. Mani, 183 N.J. 70 (2005):

> [T]he court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Id. at 94—95 (citing Williams v. Williams, 59 N.J. 229, 233 (1971)).]

While not every factor must be considered, Reese v. Weiss, 430 N.J. Super. 552, 586 (App. Div. 2013), a failure to provide an analysis of these factors on the record is a ground upon which this court may disturb the Family Part's award of counsel fees. Accardi v. Accardi, 369 N.J. Super. 75, 90 (App. Div. 2004).

Here, Judge Casale properly analyzed the nine factors listed in Rule 5:3-5(c) when determining whether defendant was entitled to an award of counsel fees incurred in prosecuting her motion to dismiss plaintiff's complaint. He found that both parties were in "excellent financial shape," but the parties' post-judgment history and most recent case information statements indicated plaintiff "continue[d] to amass a great amount of wealth from his successful business[]" and was therefore in "better" financial circumstances than defendant. Judge Casale also found it would be "unreasonable" and "unfair" for defendant to litigate plaintiff's claims in a separate Law Division complaint, when "she could [have] face[d] them in the matrimonial litigation, and settled them, or had the plaintiff dismiss same as a result of the [Settlement Agreement]." Finally, Judge Casale emphasized that defendant was successful in dismissing plaintiff's complaint; thus, factor 7 weighed in her favor. He found the remaining factors (i.e., factors 2, 4, 5, 6, and 8) were either neutral or inapplicable. These findings were well within his discretion. See Reese, supra, 430 N.J. Super. at 586.

We finally address defendant's argument with respect to her application for counsel fees under the frivolous litigation law. We review a trial court's denial of frivolous litigation sanctions under an abuse of discretion standard. Masone v. Levine, 382 N.J.

22

Super. 181, 193 (App. Div. 2005). Thus, we should not disturb the Family Part's determination unless it was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

N.J.S.A. 2A:15-59.1a(1) provides that a prevailing defendant in a civil action may recover reasonable attorney fees and litigation costs from the plaintiff if the trial judge finds the plaintiff's complaint was frivolous. The statute provides that a complaint is "frivolous" if it was "commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury;" or if the plaintiff "knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1b.

The prevailing party enforces N.J.S.A. 2A:15-59.1 by filing a motion for sanctions under Rule 1:4-8(b). The rule states that "[n]o such motion shall be filed" unless the prevailing party first serves his opponent's counsel with formal written notice indicating that the claims comprising his complaint are frivolous. R. 1:4-8(b). In accordance with Rule 1:4-8(b), this written notice must:

A-0268-15T1

> (i) state that the paper is believed to violate the provisions of this rule, (ii) set forth the basis for that belief with specificity, (iii) include a demand that the paper be withdrawn, and (iv) give notice . . . that an application for sanctions will be made within a reasonable time thereafter if the offending paper is not withdrawn within 28 days of service of the written demand.

Both N.J.S.A. 2A:15-59.1 and Rule 1:4-8 are strictly construed so as not to dissuade litigants from accessing the courts. First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007); DeBrango v. Summit Bancorp., 328 N.J. Super. 219, 226 (App. Div. 2000). The dual purpose of imposing frivolous litigation sanctions is to deter frivolous claims and to compensate parties who are forced to litigate such claims. Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 545 (App. Div. 2009); Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407 (App. Div. 2009).

A claim is considered frivolous under N.J.S.A. 2A:15-59.1b(2) only if no rational argument can be advanced in its support, it is not supported by credible evidence, a reasonable person could not have expected its success, or it is completely untenable. Belfer v. Merling, 322 N.J. Super. 124, 144 (App. Div.), certif. denied, 162 N.J. 196 (1999). Thus, an "honest attempt to press a[n] . . . ill-founded[] claim[]" is not frivolous, see McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 563 (1993),

and sanctions are not warranted if the plaintiff had a reasonable, good faith belief in the merits of his action. Wyche v. Unsatisfied Claim & Judgment Fund of N.J., 383 N.J. Super. 554, 561 (App. Div. 2006). Moreover, the courts should not discourage honest and creative advocacy. Iannone v. McHale, 245 N.J. Super. 17, 28 (App. Div. 1990).

Here, defense counsel provided plaintiff's attorney with the requisite written notice pursuant to Rule 1:4-8(b). In denying defendant's application, Judge Casale found it was "unreasonable" and "unfair" for plaintiff to bring his complaint for intentional infliction of emotional distress before the Law Division. However, he also found the allegations themselves were not brought "in bad faith, for the purpose of harassment, delay, or malicious injury." He found plaintiff's complaint "arose out of the fact that he believed . . . [the Family Part's] prior orders were ineffective, and . . . the sanctions previously imposed against . . . defendant did not prevent her from continuing to alienate the children against him, and continually thwarting [the children's] therapy[.]"

Judge Casale's finding in this respect is akin to a credibility finding, and is thus entitled to substantial deference on appeal. See Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

25                                                    A-0268-15T1

Indeed, Judge Casale's ruling is consistent with our holding in Segal, supra, 413 N.J. Super. at 171. Plaintiff's cause of action was not wholly without merit. See id. at 194 (holding the plaintiff's arguments in support of his claims for intentional infliction of emotional distress were "objectively reasonable" and "not facially meritless[]"). As Judge Casale noted on the record, "[m]any times, [c]ourts expand doctrines in cases similar to this one[,]" and the imposition of frivolous litigation sanctions under these circumstances would cause a "chill on litigation[.]"

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION